UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SOLARA MEDICAL SUPPLIES DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. 3:19-cv-02284-H-KSC<br><br>CLASS ACTION<br><br>STIPULATED ORDER GOVERNING ELECTRONIC DISCOVERY |

This Order will govern how the parties shall manage electronic discovery in the above-captioned case.

## I. SCOPE

1. The parties and their attorneys agree to follow the guidance contained in the Federal Rules of Civil Procedure, including Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

2. The parties and their attorneys do not intend by this Order Governing Electronic Discovery to waive their rights to any privileges, protections, claims, or

defenses. All parties preserve their attorney-client privileges and other privileges and protections, and there is no intent by the Order Governing Electronic Discovery, or the production of documents pursuant to the Order Governing Electronic Discovery, to in any way waive or weaken these privileges.

3. Nothing in this Order Governing Electronic Discovery shall supersede the provisions of the any Stipulated Protective Order or any other order of this Court.

4. This Order Governing Electronic Discovery does not address, limit, or determine the relevance or admissibility of paper documents or electronically-stored information ("ESI"). Nothing in this Order Governing Electronic Discovery shall be construed to affect the admissibility of any document or data or the timing for objections to the admissibility of any document or data.

## II. DEFINITIONS

The following definitions will apply in this Order Governing Electronic Discovery, hereinafter "This Order" or "Order":

5. "ESI" or "Electronically Stored Information" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper).

6. "Native Format" means and refers to the format of ESI in which it was originally generated and/or normally kept by the Producing Party in the usual course of its business and in its regularly conducted activities.

7. "Document(s)" refers to and should be interpreted consistent with its use in Fed. R. Civ. 34 and includes ESI.

## III. PROTECTION AND CLAWBACK OF PRIVILEGED INFORMATION

To the maximum extent permitted by law, the parties agree, and the Court orders, that disclosure of information in connection with the pending litigation that the producing party thereafter claims to be protected by the attorney-client privilege or work product doctrine will not constitute or be deemed a waiver of the privilege

or protection from discovery in this case or in any other proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

If a producing party, or any other party purporting to hold a privilege has a good faith belief that purportedly privileged material has been disclosed, it shall promptly after discovering such production notify the receiving parties of its claim of privilege or protection. If a document has been used in the litigation (e.g., deposition, motion papers, briefing, expert reports), the protection of this provision only extends for 30 days after that party's receipt of a rough or final transcript that has the document attached or 30 days after the date the document is first used, whichever is longer.

Upon receipt of any notice claiming that a document is or includes purportedly privileged material, all other parties (regardless of whether they agree with the claim of privilege) shall, within 21 days:

    (a)    use reasonable efforts to destroy or sequester all copies of the purportedly privileged documents or material in their possession, custody, or control;

    (b)    notify the producing party, or any other party purporting to hold a privilege, that they have done so;

    (c)    notify the producing party that they have taken reasonable steps to retrieve and destroy or sequester the purportedly privileged documents or material from other persons, if any, to whom such documents or material have been provided; and;

    (d)    any purportedly privileged documents should be sequestered and may not be used in the litigation for any purpose including law and motion proceedings, for evaluation by experts or other consultants.

To the extent a receiving party disputes the claim of privilege work product protection, the disputing party shall notify the producing party, or any other party

purporting to hold a privilege, of its position within 10 days of receiving the privilege log or redacted version of the privileged material (the "Dispute Notification"). Within seven days of receiving the Dispute Notification, the producing party, or any other party purporting to hold the privilege, shall either withdraw its claim of privilege or confer with the disputing party in an effort to resolve their disagreement. If the disagreement is not resolved, the disputing party may bring the issue to the Court's attention pursuant to the Court's discovery procedures. Until such time that the disagreement is resolved, any documents referenced in the Dispute Notification should be sequestered and may not be used in the litigation for any purpose including law and motion proceedings, for evaluation by experts or other consultants, about whether the data should continue to be treated as privileged.

## IV.   PRESERVATION

Consistent with the parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure and Magistrate Judge Crawford's ESI Checklist, the parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief.

## V.   IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. The parties will meet and confer within a reasonable period of time after entry of this Order regarding proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted-review, predictive coding). The parties agree that the grounds for objections should be supported by specific information and best

practices. The parties will meet and confer regarding whether phasing of discovery is appropriate, and attempt in good faith to agree on the scope, source, and timing of this discovery. The parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A. Sources

The parties will meet and confer within a reasonable period of time after entry of this Order to disclose and discuss the custodial and non-custodial data sources likely to contain responsive information. The parties will identify and describe relevant electronic systems and storage locations. The parties will also disclose and describe document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits), or other practices likely to impact the existence or accessibility of responsive documents or electronically stored information. The parties will identify and describe sources they reasonably believe are likely to contain responsive information that a party asserts should not be searched due to the proportionality or because they are not reasonably accessible and will explain the reasons for such assertions. The parties will disclose third-party sources, if any, they reasonably believe are likely to contain discoverable information, subject to the proportional needs of the case. The parties retain the right, upon reviewing the initial production(s) of documents, conducting other investigation and discovery and making a showing of good cause for additional discovery, to request that files from additional custodial or non-custodial sources be searched, subject to the proportional needs of the case, and the parties agree to meet and confer regarding such request.

### B. Identification of Custodians

In connection with the parties' meet and confer efforts, the parties shall identify persons whose files are likely to contain documents and ESI relating to the subject matter of this litigation. This will include a description of the proposed

custodians' job title and brief description of such person's responsibilities (including dates of employment by the applicable party). The parties agree to meet and confer to identify custodians from whom data may be obtained, proportional to the needs of the case.  And the parties also agree to meet and confer as to  prioritizing and limiting the discovery of custodians subject to discovery, if any.  The parties retain the right, upon reviewing the initial production(s) of documents, conducting other investigation and discovery and making a showing of good cause for additional discovery, to request that files from additional custodians be searched and agree to meet and confer regarding such request.

### C. Easily Targeted Responsive Documents

The parties will meet and confer within a reasonable period of time after entry of this Order to discuss production of documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review).  The producing party will indicate which categories of documents will be produced with and without the use of search terms or other advanced search methodology.  Where potentially responsive ESI shall be searched through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

### D. Search Terms

Where the parties agree that potentially responsive ESI shall be searched through the use of search terms, the parties shall use the process identified below and shall meet and confer regarding any proposed deviation.  The producing party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant documents.  To the extent

reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc. Upon receipt of the proposed search terms, the receiving party shall provide any additional search terms that it believes are necessary to identify responsive documents. The parties will meet and confer within a reasonable period of time to discuss the additional terms, and which, if any, should be included or excluded from the search term hit report.

Upon receipt of the additional search terms, and after an initial meet and confer regarding the additional search terms, the producing party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, including families). The parties shall meet and confer regarding the proposed search terms within a reasonable period of time after receipt of the search term hit list to agree on a set of search terms.

If disputed terms still exist at the end of the meet-and-confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms.

### E. Technology-Assisted-Review

If a party intends to use predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced, the party will promptly notify the opposing party, prior to use, and with ample time to meet and confer regarding the use of technology assisted review. If the parties cannot agree on the use of technology assisted review, the parties will bring the dispute to the Court.

### VI. PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load

file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided, if available. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**VII. PRODUCTION OF ESI**

    **A. Format**

The parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, source code, audio and video files, which shall be produced in native format. If a party has a good faith belief that a file produced in black and white TIFF contains color which is relevant to the meaning of the file in question the parties will meet and confer to determine whether the file in question should be produced in color. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of e-mail messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be

provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images, in black and white, which display both the slide and speaker's notes. The Parties agree to meet and confer regarding the method of review and production of source code and other proprietary information, if any, and subject to the proportional needs of the case. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith. Specifically, if any text messages [.sms, .mms, imessage, slack data, etc.] are requested, the Parties agree to meet and confer on how best to produce these data types.

### B. De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents and e-mail thread suppression for production is not acceptable. However, application of near duplicate identification and email thread suppression for purposes of review are not prohibited. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file

providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

C.  Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language. The parties agree to meet and confer once the parties have selected their vendor for ESI, to discuss any discrepancies in field naming and capture of metadata, and to seek resolution of technical issues.

For ESI other than e-mail and e-docs that do not conform to the metadata listed in attached **Table 1**, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

D.  Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree to meet and confer regarding logos and whether logos, .gifs, .png, and other files need not be extracted as separate documents as long as they are displayed in the parent document.

E.  Attachments

The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any emails or attachments that must be withheld or redacted on the basis of privilege. If a party intends to withhold a document from production on a basis other than attorney-client or work product privilege, the parties will promptly meet and confer as to whether or not whether the proposed basis for withholding is appropriate. If the parties are not able to agree as to whether the basis for withholding is appropriate, the parties will bring

the dispute to the Court. The attachments will be produced sequentially after the parent e-mail.

Subject to the proportional needs of this case, the parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc. Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

### F. PII, PHI, other Protected Information

To the extent that discovery in this case involves Personally Identifiable Information ("PII"), Personal Health Information ("PHI), or other data protected under federal, state, local, international, or other privacy laws, the parties agree to meet and confer as to whether PII and PHI should be produced, and how to preserve, collect, review, produce and otherwise address such information, including, but not limited to anonymization, pseudo-anonymization, de-identification, masking of data, or other methods to comply with the circumstances. All subject to the proportional needs of the case and incorporating best practices related to these issues.

### G. Compressed Files Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### H. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production. Subject to the proportional needs of the case, the parties will consider whether relevant information may be produced by querying the database for proportional, relevant, and discoverable information and generating a report in a reasonably usable and exportable electronic file. Absent agreement of the parties or

an order by the Court, no party shall be required to produce the entirety of any structured database.

### I. Exception Report

The producing party shall compile an exception report enumerating unprocessed or un-processable documents, their file type and the file location, subject to the proportional needs of the case.

### J. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

### K. Redactions

If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained, subject to the proportional needs of the case.

## VIII. MISCELLANEOUS

A copy of this Order shall be provided to any non-party who is requested to produce records pursuant to subpoena or otherwise. Non-parties receiving a copy of this Order are not required to comply with its terms with respect to any hard copy (paper) or ESI produced. Nothing in this Order will diminish or alter the rights of non-parties to object to production requests or to seek a protective order or other relief authorized by law.

This Order may be modified by a Stipulated Order of the parties, by written agreement, or by the Court for good cause shown. The parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, or does, restrict the ability of any party to request additional information or seek additional relief from the Court. The parties

each retain the right to seek exceptions, amendments, or modifications to this Order from the Court. Non-parties from whom documents are requested in this action by subpoena or otherwise, shall have the same rights as parties to seek exceptions, amendments or modifications of this Order.

   IT IS SO ORDERED.

Dated: August 3, 2020

Hon. Karen S. Crawford
United States Magistrate Judge

AGREED AND STIPULATED TO BY:

DATED: July 29, 2020              ROBBINS GELLER RUDMAN
                                    & DOWD LLP
                                  STUART A. DAVIDSON
                                  CHRISTOPHER C. GOLD
                                  DOROTHY P. ANTULLIS
                                  BRADLEY M. BEALL


                                       *s/ Stuart A. Davidson*
                                  STUART A. DAVIDSON

                                  120 East Palmetto Park Road, Suite 500
                                  Boca Raton, FL  33432
                                  Telephone:  561/750-3000
                                  561/750-3364 (fax)
                                  sdavidson@rgrdlaw.com
                                  cgold@rgrdlaw.com
                                  dantullis@rgrdlaw.com
                                  bbeall@rgrdlaw.com

                                  ROBBINS GELLER RUDMAN
                                    & DOWD LLP
                                  RACHEL L. JENSEN
                                  655 West Broadway, Suite 1900
                                  San Diego, CA  92101
                                  Telephone:  619/231-1058
                                  619/231-7423 (fax)
                                  rachelj@rgrdlaw.com

<pre>
FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN
10205 N. Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  405/235-1560
405/239-2112 (fax)
wfederman@aol.com
</pre>

Interim Co-Lead Counsel for Plaintiffs

<pre>
KEOGH LAW, LTD.
WILLIAM M. SWEETNAM
55 West Monroe Street, Suite 3390
Chicago, IL  60603
Telephone:  312/726-1092
wsweetnam@keoghlaw.com

ABINGTON COLE + ELLERY
CORNELIUS P. DUKELOW
320 South Boston Avenue, Suite 1130
Tulsa, OK  74103
Telephone:  918/588-3400
cdukelow@abingtonlaw.com

GREEN & NOBLIN, P.C.
JAMES R. NOBLIN
4500 E. Pacific Coast Highway, 4th Floor
Long Beach, CA  90804
Telephone:  562/391-2487
415/477-6710 (fax)
gn@classcounsel.com

GREEN & NOBLIN, P.C.
ROBERT S. GREEN
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  415/477-6700
415/477-6710 (fax)
gn@classcounsel.com
</pre>

Interim Class Counsel for Plaintiffs

| | | |
|---|---|---|
| 1 | DATED: July 29, 2020 | LEWIS BRISBOIS BISGAARD<br>   & SMITH LLP |
| 2 | | JON P. KARDASSAKIS, SB# 90602<br>DANIELLE E. STIERNA. SB#317156 |

*s/ Jon P. Kardassakis*
JON P. KARDASSAKIS

633 West 5th Street, Suite 4000
Los Angeles, CA  90071
Telephone:  213/250-1800
213/250-7900 (fax)
Jon.Kardassakis@lewisbrisbois.com
Danielle.Stierna@lewisbrisbois.com

Attorneys for Defendant