1  ROBBINS GELLER RUDMAN         **REDACTED**
     & DOWD LLP
2  STUART A. DAVIDSON (admitted *pro hac vice*)
   DOROTHY P. ANTULLIS (admitted *pro hac vice*)
3  BRADLEY M. BEALL (admitted *pro hac vice*)
   120 East Palmetto Park Road, Suite 500
4  Boca Raton, FL 33432
   Telephone: 561/750-3000
5  561/750-3364 (fax)
   sdavidson@rgrdlaw.com
6  dantullis@rgrdlaw.com
   bbeall@rgrdlaw.com
7
   FEDERMAN & SHERWOOD
8  WILLIAM B. FEDERMAN
   A. BROOKE MURPHY
9  10205 North Pennsylvania Avenue
   Oklahoma City, OK 73120
10 Telephone: 405/235-1560
   405/239-2112 (fax)
11 WBF@federmanlaw.com
   ABM@federamanlaw.com
12
   Interim Co-Lead Counsel for Plaintiffs
13
   [Additional counsel appear on signature page.]
14

15         UNITED STATES DISTRICT COURT

16        SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17   In re SOLARA MEDICAL SUPPLIES DATA BREACH LITIGATION | Case No. 3:19-cv-02284-H-KSC |
| 18 | CLASS ACTION |
| 19   This Document Relates To: | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| 20     ALL ACTIONS. | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS |
| 21 | CERTIFICATION |
| 22 | Judge: Hon. Marilyn L. Huff |
| 23 | Date: September 13, 2021<br>Time: 10:30 AM<br>Courtroom: TBD |

24

25

26

27

28

                    - i -

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................... 1

II.   RECORD EVIDENCE COMMON TO THE CLASS ................................. 2

    A.    Solara's Services and Representations Concerning Data Security ............................................................... 2

    B.    The 2019 Data Breach ........................................... 3

    C.    Solara's Inadequate Information Security Was Ongoing and Pervasive ............................................................... 6

        1.    Solara's Information Security Was Woefully Inadequate .......... 6

        2.    Solara Failed to Meet Industry Standards and Federal Regulations ...................................................... 12

        3.    Solara Knew Its Data Security Measures Were Grossly Inadequate ...................................................... 14

III.  ARGUMENT ................................................................... 15

    A.    Rule 23 Was Designed to Aggregate Common Issues ..................... 15

    B.    The Proposed Classes Meet the Requirements of Rule 23(a) ........... 16

        1.    Numerosity ...................................................... 16

        2.    Commonality .................................................... 17

        3.    Typicality ...................................................... 18

        4.    Adequacy of Representation ...................................... 19

            a.    Named Plaintiffs Are Adequate Class Representatives .............. 19

            b.    Plaintiffs' Counsel Are Adequate ............................... 20

    C.    Rule 23(b)(3) Certification of a Damages Class Is Proper ............ 21

        1.    Common Questions of Law and Fact Predominate ................... 21

            a.    Common Evidence Proves Plaintiffs' Claims .................. 21

                (1)    Plaintiffs' CMIA Claim Uses Common Proof .................. 22

                (2)    Plaintiffs' Contract-Based Claims Use Common Proof .......... 23

4845-0377-9824

           (3)     Plaintiffs Prove Negligence with Common Proof ................................................ 25

           (4)     California CRA & Michigan Identity Theft Protection Act – Failure to Notify ..................... 26

           (5)     Plaintiffs' UCL Claim Is Amenable to Common Proof .......................................... 26

           (6)     In the Alternative, the Court May Certify a Multi-State Consumer Protection Law Class ...... 28

       b.     Plaintiffs' Alternative Unjust Enrichment Claim Is Amenable to Common Proof .......................... 32

       c.     Plaintiffs Will Establish and Calculate Damages with Common Proof and Methodologies ...................... 33

           (1)     Statutory Damages ................................................. 34

           (2)     Lost Value in PII & PHI ...................................... 35

           (3)     UCL and Unjust Enrichment Disgorgement ........ 37

           (4)     Identity Theft Losses ............................................ 38

     2.     A Class Action Is Superior to Tens of Thousands of Expensive Trials ...................................... 40

   D.     Rule 23(b)(2) Certification of an Injunctive Relief Class Is Appropriate ....................................... 42

IV.     CONCLUSION ............................................................. 45

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Adkins v. Facebook, Inc.,*
424 F. Supp. 3d 686 (N.D. Cal. 2019)...............................................44, 45

*Alger v. FCA US LLC,*
334 F.R.D. 415 (E.D. Cal. 2020)....................................................26, 27

*Allen v. Hyland's Inc.,*
300 F.R.D. 643 (C.D. Cal. 2014) .........................................................21

*Allen v. Owens-Corning Fiberglas Corp.,*
571 N.W.2d 530 (Mich. Ct. App. 1997).................................................29

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.,*
640 F. Supp. 1411 (E.D.N.C. 1986) ......................................................32

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) .........................................................................16

*Amone v. Aveiro,*
226 F.R.D. 677 (D. Haw. 2005) ...........................................................17

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005)..................................................27

*Astiana v. Kashi Co.,*
291 F.R.D. 493 (S.D. Cal. 2013)....................................................*passim*

*B.K. ex rel. Tinsley v. Snyder,*
922 F.3d 957 (9th Cir. 2019).................................................................44

*Bateman v. Am. Multi-Cinema, Inc.,*
623 F.3d 708 (9th Cir. 2010).................................................................35

*Bear Hollow, LLC v. Moberk, LLC,*
2006 WL 1642126 (W.D.N.C. June 5, 2006) ...........................................31

*Beck-Ellman v. Kaz USA, Inc.,*
283 F.R.D. 558 (S.D. Cal. 2012)..........................................16, 19, 32, 33

*Bockrath v. Aldrich Chem. Co.,*
980 P.2d 398 (Cal. 1999)....................................................................36

*Boyd v. Drum,*
501 S.E.2d 91 (N.C. Ct. App. 1998) ......................................................31

*Brazil v. Dole Packaged Foods, LLC,*
2014 WL 2466559 (N.D. Cal. May 30, 2014) ..........................................43

4845-0377-9824
-

*Brink v. First Credit Res.*,
   185 F.R.D. 567 (D. Ariz. 1999)..................................................................16

*Britz Fertilizers, Inc. v. Bayer Corp.*,
   665 F. Supp. 2d 1142 (E.D. Cal. 2009)...................................................35

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013)....................................................................42

*Canady v. Mann*,
   419 S.E.2d 597 (N.C. Ct. App. 1992).....................................................31

*Cap. People First v. State Dept. of Developmental Servs.*,
   155 Cal. App. 4th 676 (2007)...................................................................23

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   272 Cal. Rptr. 387 (Ct. App. 1990).........................................................25

*CDF Firefighters v. Maldonado*,
   70 Cal. Rptr. 3d 667 (Ct. App. 2008)......................................................23

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).......................................................................1, 33, 38

*Cullen v. Valley Forge Life Ins. Co.*,
   589 S.E.2d 423 (N.C. Ct. App. 2003).....................................................32

*Dalton v. Camp*,
   548 S.E.2d 704 (N.C. 2001).....................................................................31

*Davidson v. Apple*,
   2018 WL 2325426 (N.D. Cal. May 8, 2018)..........................................21

*Dix v. Am. Bankers Life Assurance Co. of Fla.*,
   415 N.W.2d 206 (Mich. 1987)..........................................................30, 42

*Dreher v. Experian Info. Sols., Inc.*,
   2014 WL 2800766 (E.D. Va. June 19, 2014)..........................................35

*Durant v. ServiceMaster Co.*,
   159 F. Supp. 2d 977 (E.D. Mich. 2001)..................................................29

*Eckard Brandes, Inc. v. Riley*,
   338 F.3d 1082 (9th Cir. 2003)..................................................................37

*Eley v. Mid/East Acceptance Corp. of N.C., Inc.*,
   614 S.E.2d 555 (N.C. Ct. App. 2005).....................................................31

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011).............................................................15, 17

*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. June 13, 2014)...................................21, 22

4845-0377-9824

*Everts v. Parkinson*,
  555 S.E.2d 667 (N.C. Ct. App. 2001) ................................................ 31

*Evon v. Law Offs. of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ........................................................... 27

*Fleck v. Titan Tire Corp.*,
  177 F. Supp. 2d 605 (E.D. Mich. 2001) ............................................ 30

*Frey v. First Nat'l Bank Sw.*,
  602 F. App'x 164 (5th Cir. 2015) ...................................................... 35

*Friedland v. Coastal Healthcare Grp., Inc.*,
  1996 U.S. Dist. LEXIS 16088 (M.D.N.C. Sept. 12, 1996) ................ 31

*Gasperoni v. Metabolife Int'l, Inc.*,
  2000 WL 33365948 (E.D. Mich. Sept. 27, 2000) .............................. 30

*Gilbert v. MoneyMutual, LLC*,
  318 F.R.D. 614 (N.D. Cal. 2016) ....................................................... 27

*Giroux v. Essex Prop. Tr., Inc.*,
  2018 WL 2463107 (N.D. Cal. June 1, 2018) ...................................... 25

*Gold v. Midland Credit Mgmt., Inc.*,
  306 F.R.D. 623 (N.D. Cal. 2014) ....................................................... 34

*Golden v. Am. Pro Energy*,
  2017 WL 10573989 (C.D. Cal. May 11, 2017) ................................... 34

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................... 18, 19

*Harris v. Palm Springs Alpine Ests., Inc.*,
  329 F.2d 909 (9th Cir. 1964) ............................................................. 16

*Hoving v. Laws. Title Ins. Co.*,
  256 F.R.D. 555 (E.D. Mich. 2009) ..................................................... 33

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ........................................................... 25

*In re Adobe Sys., Inc. Priv. Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................... 27, 28

*In re Anthem Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................... 28

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 27, 2016) .................................... 38

*In re Brinker Data Incident Litig.*,
  2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ............................ 16, 18, 19, 25

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ............................................ 32, 41

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ............................................................ 42

*In re Est. of Marcos Hum. Rts. Litig.*,
910 F. Supp. 1460 (D. Haw. 1995), *aff'd sub nom. Hilao v. Est. of Marcos*, 103 F.3d 767 (9th Cir. 1996) ............................................................ 36

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................ 28

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ...................................................... 19

*In re Lenovo Adware Litig.*,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ................................... 21

*In re Packaged Seafood Prods. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019) ...................................................... 28

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
198 F. Supp. 3d 1183 (D. Or. 2016) ................................................ 22

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004) ...................................................... 33

*In re San Jose Airport Hotel, LLC*,
2018 WL 1426702 (N.D. Cal. Mar. 22, 2018) ................................. 35

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
2020 WL 2214152 (S.D. Cal. May 7, 2020) ..................................... 22

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ........................................................... 37

*In re Toys "R" Us - Del., Inc. - FACTA Litig.*,
300 F.R.D. 347 (C.D. Cal. 2013) ...................................................... 34

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ............................................................ 42

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ...................................... 42, 43, 44, 45

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................ 24, 38

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018) .......................................................... 38

4845-0377-9824

*Jimenez v. Allstate Ins. Co.* (*Jimenez I*),
    2012 WL 1366052 (C.D. Cal. Apr. 18, 2012)....................................................37

*Jimenez v. Allstate Ins. Co.* (*Jimenez II*),
    765 F.3d 1161 (9th Cir. 2014)..............................................................41, 42

*Juarez v. Arcadia Fin. Ltd.*,
    152 Cal. App. 4th 889 (2007)....................................................................38

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017)..............................................................21, 41

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015) ..............................................................42

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)..............................................................28

*Keilholtz v. Lennox Hearth Prods. Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ..............................................................32

*Ken-Mar Fin. v. Harvey*,
    368 S.E.2d 646 (N.C. Ct. App. 1988) ........................................................31

*Langan v. Johnson & Johnson Consumer Cos.*,
    95 F. Supp. 3d 284 (D. Conn. 2015) ........................................................42

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ....................................................................33

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*,
    418 P.3d 400 (Cal. 2018)..........................................................................36

*Lippitt v. Raymond James Fin. Servs., Inc.*,
    340 F.3d 1033 (9th Cir. 2003)..................................................................26

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007)....................................................................27

*Maldondo v. Solara Med. Supplies, LLC*,
    No. 1:20-cv-12198-LTS (D. Mass.) ..........................................................20

*Marsh v. First Bank of Del.*,
    2014 WL 554553 (N.D. Cal. Feb. 7, 2014)................................................25

*McLeod v. Bank of Am., N.A.*,
    2017 WL 6373020 (N.D. Cal. Dec. 13, 2017) ............................................37

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018)..................................................................32

*Mitchell v. Gonzales*,
    819 P.2d 872 (Cal. 1991)..........................................................................35

4845-0377-9824

*Northstar Fin. Advisors Inc. v. Schwab Inv.*,
   779 F.3d 1036 (9th Cir. 2015) ................................................................... 23

*Overka v. Am. Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010) .................................................................. 33

*Parsons v. Bristol Dev. Co.*,
   402 P.2d 839 (Cal. 1965) ........................................................................... 24

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................... 44, 45

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ............................................................... 17

*Regents of the Univ. of Cal. v. Superior Ct.*,
   163 Cal. Rptr. 3d 205 (Ct. App. 2013) ...................................................... 22

*Regnier v. Payter*,
   2003 WL 21246635 (Mich. Ct. App. May 29, 2003) ................................. 29

*Rutherford v. Owens-Ill., Inc.*,
   941 P.2d 1203 (Cal. 1997) ......................................................................... 35

*S. Atl. Ltd. P'ship of Tenn., LP v. Riese*,
   284 F.3d 518 (4th Cir. 2002) ..................................................................... 32

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018) ..................................................................... 16

*Santana v. Rady Child.'s Hosp.-San Diego E-File*,
   2017 Cal. Super. LEXIS 553 (Cal. Super. Ct. Nov. 6, 2017) ..................... 23

*Schuchardt v. Law Off. of Rory W. Clark*,
   2016 WL 232435 (N.D. Cal. Jan. 20, 2016) ............................................... 34

*Schumacher v. Tyson Fresh Meats, Inc.*,
   221 F.R.D. 605 (D.S.D. 2004) .................................................................... 33

*Singer v. AT&T Corp.*,
   185 F.R.D. 681 (S.D. Fla. 1998) ................................................................ 33

*Smith v. Triad of Ala., LLC*,
   2017 WL 1044692 (M.D. Ala. Mar. 17, 2017), *aff'd on reconsideration*,
   2017 WL 3816722 (M.D. Ala. Aug. 31, 2017) ................................ 25, 39, 40

*Soares v. Flowers Foods, Inc.*,
   320 F.R.D. 464 (N.D. Cal. 2017) ............................................................... 40

*Sobel v. Hertz Corp.*,
   674 F. App'x 663 (9th Cir. 2017) ............................................................... 27

*Stollenwerk v. Tri-West Health Care All.*,
   254 F. App'x 664 (9th Cir. 2007) ......................................................... 38, 39

4845-0377-9824

*Sutter Health v. Superior Ct.,*
    174 Cal. Rptr. 3d 653 (Ct. App. 2014) ...................................................22

*Svenson v. Google Inc.,*
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...................................................27

*Tait v. BSH Home Appliances Corp.,*
    289 F.R.D. 466 (C.D. Cal. 2012) ...................................................28

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,*
    308 F.R.D. 630 (N.D. Cal. 2015) ...................................................42

*Temborius v. Slatkin,*
    403 N.W.2d 821 (Mich. Ct. App. 1986)...................................................29

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) ...................................................37, 41

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ...................................................42

*Van Eman v. Cars Prot. Plus,*
    2007 WL 1491814 (Mich. Ct. App. May 22, 2007)...................................................29

*Vaquero v. Ashley Furniture Indus., Inc.,*
    824 F.3d 1150 (9th Cir. 2016) ...................................................37

*Vasic v. PatentHealth, L.L.C.,*
    171 F. Supp. 3d 1034 (S.D. Cal. 2016) ...................................................28

*Villalpando v. Exel Direct Inc.,*
    2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) ...................................................36

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ...................................................43, 45

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ...................................................42

*Wash. Mut. Bank v. Superior Ct.,*
    24 Cal. 4th 906 (2001) ...................................................21

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ...................................................30

*Wolph v. Acer Am. Corp.,*
    272 F.R.D. 477 (N.D. Cal. 2011) ...................................................21

*Zinser v. Accufix Rsch. Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ...................................................40

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §45(a) ...................................................42

4845-0377-9824

18 U.S.C. §1001 ........................................................................................... 3

California Business and Professions Code
  §17203 ........................................................................................................ 42
  §17204 ........................................................................................................ 42
  §22576 ........................................................................................................ 42

California Civil Code
  §56. ............................................................................................................. 42
  §56.05(j) ...................................................................................................... 22
  §56.35-36 .................................................................................................... 34
  §56.36 ......................................................................................................... 22
  §56.36(b) ..................................................................................................... 23
  §56.101(a) ................................................................................................... 22
  §1550 .......................................................................................................... 24
  §1798.81.5(b) .............................................................................................. 42
  §1798.82 ...................................................................................................... 26

Judicial Council of California Civil Jury Instruction (2020) ......................... 36

Connecticut General Statutes
  §42-110b ...................................................................................................... 42
  §42-110g ...................................................................................................... 42

Federal Rules of Civil Procedure
  Rule 23 .................................................................................................. 1, 15, 16
  Rule 23(a) ........................................................................................... 1, 16, 42
  Rule 23(a)(1) ........................................................................................... 16, 17
  Rule 23(a)(2) ................................................................................................ 17
  Rule 23(a)(3) ................................................................................................ 18
  Rule 23(a)(4) ................................................................................................ 19
  Rule 23(b) ............................................................................................... 15, 42
  Rule 23(b)(2) .......................................................................................... passim
  Rule 23(b)(3) .......................................................................................... passim
  Rule 23(b)(3)(A) .......................................................................................... 40
  Rule 23(b)(3)(B) .......................................................................................... 40
  Rule 23(b)(3)(C) .......................................................................................... 40
  Rule 23(b)(3)(D) .......................................................................................... 40
  Rule 23(c)(4) ............................................................................................... 42
  Rule 30(b)(6) ............................................................................................... 21

Michigan Compiled Laws Annotated
  §445.72(1)-(4) .............................................................................................. 26
  §445.903 ...................................................................................................... 42
  §445.903(1)(cc) ........................................................................................... 28
  §445.903(1)(s) ............................................................................................. 29
  §445.911 ...................................................................................................... 42

North Carolina General Statutes
  §75-1.1 ........................................................................................................ 32

Pattern Jury Instructions §813.70 ................................................................ 32

16 CFR §4.1(e)(1)(i)(D) ................................................................................. 3

4845-0377-9824

**SECONDARY AUTHORITIES**

1 Dan B. Dobbs, Law of Remedies §4.5(5) (2d ed. 1993) ...................................... 37

Data Security Standard, Requirements and Security Assessment Procedures,
   Version 3.2.1 (May 2018), https://www.pcisecuritystandards.org/documents/
   PCI_DSS_v3-2-1.pdf?agreement=true&time=1617129340161 (last visited
   June 22, 2021) ................................................................................................ 7

RESTATEMENT (SECOND) OF TORTS §448 (1965) ...................................... 36

4845-0377-9824

## I.   INTRODUCTION

Plaintiffs respectfully move for certification of their claims against Solara Medical Supplies, LLC ("Solara") under Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, and for the appointment of themselves and their counsel as Class representatives and Class Counsel, respectively. Plaintiffs ask the Court to certify a Class defined as: "all individuals in the United States and its Territories who were sent a letter from Solara Medical Supplies, LLC notifying them that their Protected Health Information and/or Personally Identifiable Information may have been compromised by the Data Breach."

The common questions of law and fact raised by Solara's inadequate (indeed, abysmal) data security practices predominate, both in significance and in ability to move the case toward adjudication, over any individual questions, making this action ideal for class treatment. The fact that several of Plaintiffs' claims – including under California's Confidentially of Medical Information Act ("CMIA") – provide for an award of *statutory* damages requiring simple arithmetic to calculate class-wide (as Solara's damages expert concedes), nullifies any argument that individual issues could predominate here; indeed, this is why CMIA claims are often certified. Simply put, either Solara violated the CMIA with respect to the data breach or it did not. If it did, each Class member whose protected health information ("PHI") was breached is entitled to an award of $1,000. Full stop. And, even with respect to Plaintiffs' other claims, several of which arise under California law, there are no individual issues relating to Solara's liability, and the Ninth Circuit has repeatedly held that individual damages calculations (the only potential individual issue at play) do not defeat class certification. Nevertheless, Plaintiffs have submitted an expert declaration demonstrating how other class-wide damages may be calculated, easily satisfying the Supreme Court's requirements in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), to provide a methodology for calculating damages tied to Plaintiffs' legal theories. For the reasons that follow, Plaintiffs' Motion should be granted in full.

## II.    RECORD EVIDENCE COMMON TO THE CLASS

### A.    Solara's Services and Representations Concerning Data Security

Solara is the largest direct-to-patient supplier of advanced diabetic devices, including continuous glucose monitors, insulin pumps, and other supplies for patients with diabetes. It is also a registered pharmacy in the state of California. As part of Solara's business, Solara solicits, collects, and stores substantial amounts of PHI and other Personally Identifiable Information ("PII"), including payment card numbers, from its patients.

As a policy, Solara provides its Notice of Privacy Practices ("NOPP") to all patients in a welcome letter. *See* Defendant Solara Medical Supplies, LLC's Supplemental Responses to Request for Admissions, Set One ("Supp. Resp. to RFA") No. 4, Ex. 1;[1] SOLARA001191 at 1216, Ex. 2. Therein, Solara represents that it ███████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ SOLARA000439 at 444, Ex. 3. Additionally, Solara's NOPP acknowledges that, because ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ *Id.* at SOLARA000445.

Likewise, Solara provides each of its patients with a Patient Bill of Rights ("PBOR") in a welcome letter. Supp. Resp. to RFA No. 3, Ex. 1. The PBOR assures patients that they have a right to ████████████████████████████████

---

[1]    All references to "Ex. ___" refer to exhibits attached to the Declaration of Stuart A. Davidson in Support of Plaintiffs' Motion for Class Certification, filed contemporaneously herewith.



1  ███████████████████████ SOLARA000439 at 440, Ex. 3. Critically,

2  Solara's PBOR also represents that Solara ████████████████████

3  ██████████████████████ *Id.* at SOLARA000441.

4     **B.    The 2019 Data Breach**

5  ██████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ████████ SOLARA000204 at 210, Ex. 4. As Solara admitted to the FTC, ██

9  ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ███████████████████████████████████ SOLARA000188 at 193,

12 Ex. 5; Supp. Resp. to RFA No. 21, Ex. 1.[2] ███████████████

13 ██████████████████████████████████████████████████

14 ██████████████████████████████████████████████████

15 ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ██████████████████████████████████████████████████

18 ██████████████ SOLARA000204 at 210, Ex. 4.

19      The size and scope of the information set compromised during the Data

20 Breach is staggering. The source documents include: 16,752 emails, 10,259 PDFs,

21 1,021 Excel files, 265 images, 128 Word files, 60 text files, 36 other file types, and

22 three PowerPoint files. *See* Defendant Solara Medical Supplies, LLC's

---

[2]  An attorney representing a party in an FTC proceeding or investigation is prohibited from "knowingly or recklessly give[ing] false or misleading information" to the FTC. *See* 16 CFR §4.1(e)(1)(i)(D); *see also* 18 U.S.C. §1001 (making it a crime to "make[] any materially false, fictitious, or fraudulent statement or representation" to a federal agency).

[3] ████████████████████████████████████████████████
██████████████████████████████████████████████████████

1    Supplemental Responses to Special Interrogatories, Set One ("Supp. Resp. to Spec.

2    Rog.") No. 3, Ex. 7. Solara confirmed that these source documents contain a litany

3    of its patients' PII and PHI, including: ███████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    █████████████████████████████████████████   SOLARA000204

9    at 211-12, Ex. 4. Out of Solara's 136,442 total customers from 2015 to 2019,

10   115,212 are Class members. *See* Supp. Resp. to Spec. Rog No. 1, Ex. 7.

11        Due to its appalling security and systemic lack of compliance (as detailed

12   below), ██████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████   Rebuttal Declaration of Mary T. Frantz ("Frantz Rebuttal"), ¶8, Ex. 8.

16   Thereafter, ██████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████   *See* Declaration of Mary T. Frantz ("Frantz Decl."), ¶22,

19   Ex. 9. ████████████████████████████████████████████████████████████

20   ██████████████████████████████   SOLARA000204 at 211, Ex. 4.

21   ████████████████████████████████████████████████████████████

22   ████████   SOLARA000161, Ex. 6. The following day, ████████████████████

23   ████████████████████████████████████████████████████████████████

24   

---

25   4   Although Solara claims that it cannot provide the exact number of individuals
     whose PHI may have been contained in the source documents, it issued notice letters
26   to individuals who had one or more of the following types of "medical information"
     appear in the source documents: patient account number; medical record number,
27   patient    identification    number;    diagnosis;    treatment    information;
     medication/prescription information; and/or doctor's name. Supp. Resp. to Spec.
28   Rog No. 3, Ex. 7.



1    SOLARA000188 at 193,

2    Ex. 5. ███████████████████████████████████████

3    ███████████████████████████████████████

4    ███████████████████████████████████████

5    ███████████████████████████████████████

6    ██████ SOLARA000161 at 162, Ex. 6.[5] █████████

7    ███████████████████████████████████████

8    ██████████ *Id.* at 163.

9    ██████████████████████████████████████

10   ███████████████████████████████████████

11   ███████████████████████████████████████

12   ███████████████████████████████████████

13   *See* Frantz Decl., ¶23, Ex. 9; Frantz

14   Rebuttal, ¶¶3-8. Ex. 8. ████████████████████

15   ███████████████████████████████████████

16   ███████████████████████████████████████

17   ███████████████████████████████████████

18   ██████ Frantz Decl., ¶23, Ex. 9. Given the dreadful state of Solara's IT security

19   environment at the time of the Data Breach, it is unconscionable that no other

20   compromise methods were investigated outside of the phishing context.

21   ███████████████████████████████████████

22   ███████████████████████████████████████

23

24   ―――――――――――――――
     [5]  Solara has defended this case based on the argument that "Plaintiffs are unable
25   to allege that an unauthorized person actually viewed any information about him or
     her that was contained in [Solara's
26   ███████████████████████████████████████
27   ███████████████████████████████████████
28   ████████████

1  SOLARA000204 at 211, Ex. 4. Moreover, ████████████████████████████

2  ████████████████████████████████████. *Id.* Aside from its statutory and

3  regulatory obligations, Solara's delay in providing written notification violated its

4  ████████████████████████████████████████████████████████████████

5  ██████████   SOLARA001191 at 1206, Ex. 2.

6      **C.**    **Solara's Inadequate Information Security Was Ongoing and Pervasive**

7
8          **1.**    **Solara's Information Security Was Woefully Inadequate**

9      It is entirely unsurprising that Solara was breached in 2019, given that it has

10  a well-documented history of shirking its data security obligations and refusing to

11  properly fund its IT security. Leading up to the Data Breach, ███████████████



21  ████████████████████████████████ WMP_0000008, Ex. 11. ████

28      *Id.* at

4845-0377-9824

1   24-25. But, most critically, ████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████ *Id.* at 24-25, 49-63. Based on this ████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████ *Id.* at 23. Worse still, it ████████████████

7   ████████████████████████ *Id.* ████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████ *Id.*

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████ *Id.* at 21. Accordingly, ████████████████████

13  ████████████████████████████ *Id.* ████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████ *Id.* at 27. In response, ████████████████

17  ████████████████████████████████████████████ *Id.* ████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████ Excerpts of

20

21

22

23  [6]   PCI DSS stands for Payment Card Industry Data Security Standards, and "was
24  developed to encourage and enhance cardholder data security and facilitate the broad
    adoption of consistent data security measures globally. PCI DSS provides *a baseline*
    of technical and operational requirements designed to protect account data. PCI DSS
25  applies to *all entities* involved in payment card processing – including merchants,
    processors, acquirers, issuers, and service providers. PCI DSS also *applies to all*
26  *other entities that store, process or transmit cardholder data* (CHD) and/or
    sensitive authentication data (SAD)." *See* Payment Card Industry (PCI) Data
27  Security Standard, Requirements and Security Assessment Procedures, Version
    3.2.1 (May 2018), https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-
28  2-1.pdf?agreement=true&time=1617129340161 (last visited June 22, 2021).



1   Deposition of Brad Haller on March 20, 2021 ("Haller Dep.") at 51:25-52:7, Ex. 12.[7]

4   *Id.* at 64:20-23,

5   67:5-21. In addition,

8   *Id.* at 44:8-

9   45:20. To be sure,

11   *Id.* at

12   75:23-76:9. Thus, unsurprisingly,

13   *Id.* at 77:5-11.

15   *Id.* at 84:7-12.

17   INFRA_0002224 at 2231, Ex.

18   13.



1   INFRA0000009 at 16-19, Ex. 14. ████████████████████████████

2   ███████████████████████████████████████ *id.* at 18-19, ██

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ████████████████████ *id.* ████████████████████████

6   ████████████████████████████████████████████████████

7   ████████████████ *Id.* at 19.

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   INFRA0000241, Ex. 15. ██████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████ *See, e.g.*, INFRA0000325, Ex. 16;

14   INFRA0000328, Ex. 17; INFRA0000397 at 401, Ex. 18; INFRA0000406 at 422,

15   Ex. 19; INFRA0000436 at 453-54, Ex. 20; INFRA0000531 at 549-50, Ex. 21;[8]

16   INFRA0000567 at 585-86, Ex. 23; INFRA0000655 at 675-76, Ex. 24;

17   INFRA0000919 at 933-34, Ex. 25.

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26

27   [8] ████████████████████████████████████████████████████

28   ████████████████████████████████████████████

4845-0377-9824

1

2   INFRA0001162 at 1177, Ex. 26. ████████████████████████████



15   *Id.* at 1186.

16        However, ████████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████   INFRA0001482 at 1493, Ex. 27; INFRA0001518 at

20   1529, Ex. 28; INFRA0001554 at 1565, Ex. 29; INFRA0001592 at 1602, Ex. 30;

21   INFRA0001628 at 1637, Ex. 31; INFRA0001700 at 1713, Ex. 32; INFRA0001776

22   at 1786, Ex. 33; INFRA0001813 at 1823, Ex. 34; INFRA0001850 at 1860, Ex. 35;

23   INFRA0001887 at 1897, Ex. 36; INFRA0001924 at 1934, Ex. 37; INFRA0001961

24   at 1971, Ex. 38; INFRA0002035 at 2045, Ex. 39; INFRA0002072 at 2082, Ex. 40;

25   INFRA0002109 at 2119, Ex. 41; INFRA0002146 at 2153, Ex. 42;[9] INFRA0002263

26

27   _____

     [9] ████

28   ████████████████████████████████████████████████

4845-0377-9824

1   at 2270, Ex. 44; INFRA0002302 at 2309, Ex. 45; INFRA0002341 at 2348, Ex. 46;

2   INFRA0002428 at 2435, Ex. 47; INFRA0002507 at 2514, Ex. 48.

3          In the interim, █████████████████████████████████████████████

4   █████████████████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████████████████████

6   ███████████████████████████████ Excerpts of Deposition of Connetic 30(b)(6)

7   Witness Matt Strebe on November 20, 2020 ("Connetic Dep.") at 63:1-8, Ex. 49.

8   ████████████████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████████████████████

11  █████████████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████████████████

13  ████████████████████████████████ CONNETIC0001421, Ex. 50. ██████████

14  █████████████████████████████████████████████████████████████████████

15  █████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████ *Id.*

17        Among its extensive findings, ██████████████████████████████████

18  █████████████████████████████████████████ [10], ████████████████████

19  █████████████████████████████████████████████████████████████████████

20  █████████████████████████████████████████████████████████████████████

21  █████████████████████████████████████████████████████████████████████

22

23  ────────────────────────

24  ████████████████████████████████████████████████████████████████████

25  [10] ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

4845-0377-9824



1  
2
3
4                                                                          *Id.* at
5  1422. Significantly,
6
7
8                                        *Id.*
9
10
11  Connetic Dep. at 167:19-168:25, Ex. 49.
12
13
14      SOLARA000354, Ex. 53.
15                                              *Id.*
16
17
18
19
20
21  Unfortunately, it was Solara's patients who ultimately paid the price.

**2.    Solara Failed to Meet Industry Standards and
       Federal Regulations**

Solara has consistently failed to implement data security measures that satisfy

its HIPAA and PCI DSS compliance obligations, despite the fact that

For example,

."



1

2

3

4  WMP_0000008 at 24, Ex. 11.

5  As to PCI DSS compliance,

6

7

8

9

10

11  *Id.*

12

13  *Id.*

14  Similarly,

15

16  INFRA0000009 at 19, Ex. 14.

17  Likewise,

18

19  *Id.*

20

21  *See supra* at 10-11.

22  In

23

24  CONNETIC0153696, Ex. 54.

25

26

27  [11] HITRUST is a commercially generated framework of security controls that is designed to show gaps to HIPAA compliance. *See* Connetic Dep. at 76:24-77:2, Ex. 49.

28

1    ██████████████████████████ *Id.* Additionally, while HIPAA regulations

2    required Solara to develop and maintain a Written Information Security Program, ██

3    ████████████████████████████ Connetic Dep. at 210:6-16, Ex. 49.

4    ███ Moreover, ████████████████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████ despite the fact that HIPAA *requires* PHI access logs to

7    be retained for *six years*, and PCI DSS section 10.7 requires logs to be retained for

8    *one year*. Frantz Decl., ¶¶29, 35, Ex. 9; Frantz Rebuttal, ¶6, Ex. 8. Thus, Solara was

9    in clear violation of HIPAA, PCI DSS, and industry standards.

10          **3.     Solara Knew Its Data Security Measures Were**
             **Grossly Inadequate**

11

12    Prior to the Data Breach, ████████████████████████████

13    ████████████████████████████████████████████████

14    ████████████████████████████████████████████████

15    ███ SOLARA000354 at 84, Ex. 53. Indeed, ████████████████

16    ████████████████████████████████████████████████

17    ██████████████ Connetic Dep. at 159:6-17, Ex. 49. Moreover, ███████

18    ████████████████████████████████████████████████

19    ████████████████████████████████████████████████

20    ████████████████████ *Id.* at 229:2-25. ████████████████

21    ████████████████████████████████████████████████

22    ████████████████████████████████████████████████

23    ████████████████████████████████████████████████

24    CONNETIC0001421 at 1459, Ex. 50.

25    In addition, ████████████████████████████████████

26    ████████████████████████████████████████████████

27    WMP_0000008 at 23, Ex. 11 ████████████████████████

28    ████████████████████████████████████████████████

4845-0377-9824



1  ▮▮▮ INFRA0000009 at 18-19, Ex. 14 ▮▮▮

2  ▮▮▮

3  CONNETIC0001421, Ex. 50 ▮▮▮

4  ▮▮▮

5  ▮▮▮ To be

6  sure, ▮▮▮

7  ▮▮▮ For example, ▮▮▮

8  ▮▮ WMP_0000008, and ▮▮▮

9  INFRA0000009 at 18-19, Ex. 14 ▮▮▮

10  ▮▮▮

11  CONNETIC0001421, Ex. 50 ▮▮▮

12  ▮▮▮

13  ▮▮▮

14  ▮▮

15  Despite receiving these ▮▮▮

16  ▮▮▮

17  Indeed, ▮▮▮

18  ▮▮▮

19  ▮▮ *See, e.g.*, INFRA0002224 at 2231-32, Ex. 13; INFRA0002183, Ex. 43

20  ▮▮▮

21  **III.   ARGUMENT**

22  **A.   Rule 23 Was Designed to Aggregate Common Issues**

23  The requirements of Federal Rule of Civil Procedure 23 are well known:

24  numerosity, commonality, typicality, and adequacy, and satisfaction of the

25  requirements for one of the class types defined in Rule 23(b). *Ellis v. Costco*

26  *Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). Certification under Rule

27  23(b)(3) requires that "questions of law or fact common to class members

28  predominate over any questions affecting only individual members, and that a class

4845-0377-9824

1  action is superior to other available methods for fairly and efficiently adjudicating
2  the controversy."[12] *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir.
3  2018). To certify a Rule 23(b)(2) class, the plaintiffs must show that "the party
4  opposing the class has acted or refused to act on grounds that apply generally to the
5  class, so that final injunctive relief or corresponding declaratory relief is appropriate
6  respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

7          While "a rigorous analysis" is required, *Beck-Ellman v. Kaz USA, Inc.*, 283
8  F.R.D. 558, 563 (S.D. Cal. 2012) (Huff, J.), this does not equate to "a mini-trial,"
9  *Sali*, 889 F.3d at 631. Where the merits are probed, they may be so only to the extent
10 "that they are relevant to determining whether the Rule 23 prerequisites for class
11 certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S.
12 455, 466 (2013). Plaintiffs satisfy their burden under Rule 23, such that certification
13 of the proposed Class is the proper and efficient outcome. *See, e.g.*, *In re Brinker*
14 *Data Incident Litig.*, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) (certifying
15 class of data breach victims under Rule 23(b)(3)).

16     **B.     The Proposed Classes Meet the Requirements of Rule 23(a)**

17          **1.     Numerosity**

18          Rule 23(a) requires that a class must be "so numerous that joinder of all
19 members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not
20 mean 'impossibility,' but only the difficulty or inconvenience of joining all members
21 of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-14 (9th
22 Cir. 1964). "The requirement is met if, due to class size, it would be extremely
23 difficult or inconvenient to join all class members." *Brink v. First Credit Res.*, 185
24 F.R.D. 567, 569 (D. Ariz. 1999). To this end, "the difficulty inherent in joining as
25 few as 40 class members should raise a presumption that joinder is impracticable,

---

[12] Citations, internal quotations, and footnotes omitted and emphasis added unless
noted otherwise.

4845-0377-9824

1  and the plaintiff whose class is that large or larger should meet the test . . . on that

2  fact alone." *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005). Thus, "courts

3  [generally] find the numerosity requirement satisfied when a class includes at least

4  40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

5         Here, Solara notified ████████████████████████████████████

6  ████████████████████████████████████ *See* SOLARA000204 at

7  211, Ex. 4. Indeed, ██████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████ *See* SOLARA005469, Ex. 55.

10  Plainly, Rule 23(a)(1)'s numerosity requirement is satisfied under these facts.

**2.    Commonality**

12         Rule 23(a)(2) requires "questions of law or fact common to the class." A

13  single common question is sufficient. *See Ellis*, 657 F.3d at 981. Here, each claim

14  Plaintiffs seek to litigate turns on the question of whether Solara's security protocols

15  were adequate to protect Class members' PII and PHI. Analysis of this question

16  begets interrelated questions that are also common across the Class, including what

17  steps Solara took (or did not take) to identify and respond to security threats, whether

18  Solara complied with industry norms and applicable regulations (including under

19  HIPAA and the CMIA), and whether and when Solara knew or should have known

20  of the Data Breach. Further, discovery reveals that the Data Breach was part of

21  Solara's uniform conduct that gave rise to the legal rights Plaintiffs seek to enforce,

22  individually and class-wide, including under California law.

23         As set out in the Complaint and discussed further in Section III.C.1.a below,

24  Solara's single course of conduct also generates several additional questions of law

25  and fact common to all Class members, including whether: (a) Solara owed a

26  common law, contractual, regulatory, and/or statutory duty to adequately safeguard

27  Plaintiffs' and the Class' PII and PHI; (b) Solara breached those duties; (c) Solara

28  knew or should have known that its data security practices were inadequate or

4845-0377-9824

1  otherwise failed to comply with industry standards and regulations, including those

2  prescribed by PCI-DSS and HIPAA; (d) Solara violated the CMIA by allowing

3  unauthorized access to PHI; (e) Solara failed to timely notify Plaintiffs and the Class

4  of the Data Breach; (f) Solara committed an unfair or unlawful business practice; (g)

5  Plaintiffs and the Class are entitled to statutory or compensatory damages; and (h)

6  Plaintiffs and the Class are entitled to appropriate injunctive relief.

7       Lastly, Solara's inadequate security protocols and procedures resulted in the

8  same fundamental injury – the breach of their confidential medical information – to

9  each Class member whose PHI was accessed, entitling such Class members to

10  statutory damages under the CMIA and other state laws. Similarly, Solara's

11  inadequate security proposals and procedures resulted in the compromise of the PII

12  and/or PHI of *all* Class members, causing each Class member to suffer loss of value

13  in their PII and/or PHI and to incur out-of-pocket mitigation costs. Moreover, the

14  same set of legal theories and facts that gives rise to claims for lost value of PII

15  and/or PHI and out-of-pocket losses also gives rise to Class members' claims for

16  losses sustained through identity fraud. Commonality is, thus, easily satisfied. *See*

17  *Brinker*, 2021 WL 1405508, at *8 (commonality met where there were "several

18  questions that are common to the class and capable of classwide resolution,

19  including whether Brinker had a duty to protect customer data, whether Brinker

20  knew or should have known its data systems were susceptible, and whether Brinker

21  failed to implement adequate data security measures to protect customers' data").

22              **3.    Typicality**

23       Rule 23(a)(3)'s typicality standard is permissive. "[C]laims are 'typical' if

24  they are reasonably co-extensive with those of absent class members[.]" *Hanlon v.*

25  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[T]hey need not be

26  substantially identical." *Id.*; *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D.

27  Cal. 2013) (same) (Huff, J.).

28       Here, Plaintiffs and the Class were injured through Solara's singular pattern

4845-0377-9824

of misconduct. Plaintiffs' claims and legal theories, both in their individual and representative capacities, arise under this same factual predicate (*i.e.*, the Data Breach). *Beck-Ellman*, 283 F.R.D. at 565 (typicality satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability."). The elements Plaintiffs must prove for negligence, breach of contract, unjust enrichment, and for their claims under California's Unfair Competition Law ("UCL"), CMIA, California's Customer Records Act ("California CRA"), and other state consumer protection laws, are identical to what absent Class members must prove to establish Solara's liability. And, there are no defenses unique to Plaintiffs. Typicality is met here. *See Brinker*, 2021 WL 1405508, at \*8 (typicality met where "all Plaintiffs' injuries arise out of the same series of events, the Data Breach").

### 4.  Adequacy of Representation

Rule 23(a)(4) requires the class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A finding of adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *see also Astiana*, 291 F.R.D. at 503 (same). Plaintiffs and proposed Class Counsel satisfy these inquiries with a vociferous no and yes, respectively.

### a.  Named Plaintiffs Are Adequate Class Representatives

Plaintiffs have no conflicts of interests with absent Class members and are all members of the Class(es) they seek to represent. In addition, they "possess the same interest and suffer[ed] the same injury as the class members." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009). Indeed, Plaintiffs' and Class members' claims flow from the same underlying conduct – all suffered the compromise and theft of their PII or PHI due to Solara's wholly inadequate data security practices.

1   Plaintiffs' and the Class' interests are indisputably aligned.

2       Each Plaintiff has demonstrated their unwavering commitment to the Class
3   they seek to represent. The record reflects that all Plaintiffs have: (i) actively
4   participated in vigorous prosecution of the action on behalf of the Class; (ii)
5   participated in a lengthy Early Neutral Evaluation conference with Magistrate Judge
6   Crawford in July 2020; (iii) monitored their experienced counsel at every step; (iv)
7   reviewed numerous documents and pleadings in the case; (v) participated in
8   meetings with their attorneys and regularly communicates with them regarding
9   litigation strategy, the status of the litigation, and major developments; (vi)
10   responded to Solara's discovery requests, including providing numerous documents
11   for production and answering interrogatories; and (vii) provided testimony during
12   hours long depositions. Plaintiffs' adequacy is not subject to legitimate dispute.

13         **b.**    **Plaintiffs' Counsel Are Adequate**

14       Plaintiffs have selected competent counsel with no conflicts of interest, who
15   have vigorously prosecuted this action to date and will continue to do so. Proposed
16   Co-Lead Class Counsel and Class Counsel, as well as their firms, are experienced
17   and sophisticated class action litigators that regularly prosecute and obtain
18   significant victories for injured consumers, including in privacy and data breach
19   cases. *See* Exs. 56-59. This Court previously adopted Plaintiffs' proposal
20   designating this same slate of attorneys as Interim Co-Lead Counsel and Interim
21   Class Counsel. ECF Nos. 10, 25. Since their appointment, Plaintiffs' proposed Co-
22   Lead Class Counsel and Class Counsel have litigated this action with skill and zeal,
23   including by: (1) successfully opposing Solara's motion to dismiss (ECF No. 42);
24   (2) reviewing and analyzing over 80,000 pages of documents produced by Solara;
25   (3) serving third-party subpoenas on seven entities that produced nearly 368,000
26   pages of documents; (4) filing a motion to compel in the District of Massachusetts

27

28

4845-0377-9824

1    to obtain documents from Solara's forensic investigator, CRA;[13] (5) reviewing and

2    producing Plaintiff-related documents; (5) taking the Rule 30(b)(6) depositions of

3    third-parties Connetic and WMP; and (6) engaging and working with experts to

4    study and help explain issues for the factfinders in this litigation and to opine on

5    damages. There is no reason to doubt proposed Class Counsel's adequacy.

6        **C.    Rule 23(b)(3) Certification of a Damages Class Is Proper**

7            Here, there is "clear justification for handling the dispute on a representative

8    . . . basis [because] common questions present a significant aspect of the case and

9    they can be resolved for all members of the class in a single adjudication." *In re*

10   *Lenovo Adware Litig.*, 2016 WL 6277245, at *17 (N.D. Cal. Oct. 27, 2016).

11           **1.    Common Questions of Law and Fact Predominate**

12           "The predominance analysis under Rule 23(b)(3) focuses on the relationship

13   between the common and individual issues in the case, and tests whether proposed

14   classes are sufficiently cohesive to warrant adjudication by representation." *Just*

15   *Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017); *see also Davidson v. Apple*,

16   2018 WL 2325426, at *14 (N.D. Cal. May 8, 2018) (articulating five-principle

17   approach to predominance analysis).

18           **a.    Common Evidence Proves Plaintiffs' Claims**

19           A predominance analysis generally begins with an examination of the

20   elements underlying plaintiffs' causes of action. *Ellsworth v. U.S. Bank, N.A.*, 2014

21   WL 2734953, at *19 (N.D. Cal. June 13, 2014).[14] "In determining whether common

---

23   [13]  *Maldondo v. Solara Med. Supplies, LLC*, No. 1:20-cv-12198-LTS (D. Mass.).

24   [14]  California law applies to the claims asserted on behalf of the nationwide class
     based on Solara's "'significant contact or significant aggregation of contacts to the
25   claims of each class member.'" *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 656 (C.D.
     Cal. 2014) (quoting *Wash. Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 919 n.22
26   (2001)); *see also* ¶¶141-146; *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 485 (N.D.
     Cal. 2011) ("[W]here Acer is incorporated in California and has its principal place
27   of business and headquarters in San Jose, California, consumers who purchase an
     Acer notebook would have some expectation that California law would apply to any
28   claims arising from alleged defects such that the application of California law would
     not be arbitrary or unfair.").

1  questions predominate, the Court identifies the substantive issues related to

2  plaintiff's claims (both the causes of action and affirmative defenses); then considers

3  the proof necessary to establish each element of the claim or defense; and considers

4  how these issues would be tried." *Ellsworth*, 2014 WL 2734953, at *19.

5              **(1)    Plaintiffs' CMIA Claim Uses Common**
                        **Proof**
6

7              California's CMIA prohibits entities such as Solara from negligently releasing

8  individuals' confidential medical information and obligates covered entities to treat

9  such medical information in a "manner that preserves the confidentiality of the

10 information contained therein." Cal. Civ. Code §§56.36, 56.101(a); *In re Premera*

11 *Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1201 (D. Or.

12 2016). To establish a violation of the CMIA, a plaintiff must show that the defendant

13 negligently caused the release of "individually identifiable information . . . regarding

14 a patient's medical history, mental or physical condition, or treatment," and that an

15 unauthorized third party "viewed or otherwise accessed" the confidential

16 information. Cal. Civ. Code §56.05(j); *Regents of the Univ. of Cal. v. Superior Ct.*,

17 163 Cal. Rptr. 3d 205, 208, 216 (Ct. App. 2013). In the context of the CMIA, a

18 "release" need ***not*** be an affirmative, communicative act, but can be accomplished

19 by "negligently allowing information to end up in the possession of an unauthorized

20 person." *Sutter Health v. Superior Ct.*, 174 Cal. Rptr. 3d 653, 659 (Ct. App. 2014);

21 *see also In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020

22 WL 2214152, at *7 (S.D. Cal. May 7, 2020) ("The plain text of the statute does not

23 require an affirmative disclosure by the medical provider to create liability but in

24 fact creates a remedy for those who store records negligently.").[15] Common issues

25 _____

26 [15] In this case, Solara "admits that it did not receive an authorization or
   confidentiality waiver signed by" any Plaintiff in this litigation, and has refused "to
27 conduct a search to determine whether any putative class member provided an
   authorization or confidentiality waiver." Defendant Solara Medical Supplies, LLC's
28 Responses to Plaintiff's [sic] Second Set of Requests for Admission, Ex. 1.

1   related to Plaintiffs' CMIA claim predominate over any individual legal issues.

2   Indeed, claims arising under the CMIA are consistently certified for class

3   treatment under Rule 23(b)(3). *See, e.g.*, *Santana v. Rady Child.'s Hosp.-San Diego*

4   *E-File*, 2017 Cal. Super. LEXIS 553, at *7 (Cal. Super. Ct. Nov. 6, 2017) (certifying

5   CMIA class compromised of all individuals whose data was made accessible by a

6   data breach of health care provider and noting that "[w]hether this information

7   constitutes confidential medical information subject to protection by the CMIA is a

8   common issue [and] whether this information was 'actually viewed' is also a

9   common issue."); *St. Joseph Health Sys. Med. Info. Cases*, JCCP No. 4716, Order

10  Granting Plaintiffs' Motion for Class Certification, at 6 (Cal. Super. Ct. Dec. 5,

11  2014) (finding question of whether defendants violated the CMIA "is an issue

12  readily subject to class-wide adjudication") (Ex. 60); *see also Cap. People First v.*

13  *State Dept. of Developmental Servs.*, 155 Cal. App. 4th 676, 693 (2007) (reversing

14  denial of class certification where "[t]he overarching theme is that there is a pattern

15  and practice of failure to meet constitutional, statutory and regulatory mandates").

16  Moreover, the CMIA claim raises no questions of individualized damages – if Solara

17  is liable under the CMIA, the Class whose PHI was breached is entitled to

18  nominal/statutory damages of $1,000 per disclosure. Cal. Civ. Code §56.36(b).

19  These common issues of law and fact predominate over any individual issues.

20              **(2)    Plaintiffs' Contract-Based Claims Use**
                         **Common Proof**

21

22  Plaintiffs will use common evidence to prove the elements of their contract-

23  based claims (Counts II-IV), under California law. The elements for breach of

24  contract (express or implied) are: (a) formation; (b) Class members' performance;

25  (c) Solara's breach; and (d) resulting appreciable and actual damages. *See Northstar*

26  *Fin. Advisors Inc. v. Schwab Inv.*, 779 F.3d 1036, 1050-51 (9th Cir. 2015); *CDF*

27  *Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008). The elements

28  for breach of the covenant of good faith and fair dealing are the same, except for the

1   additional requirement that "the defendant unfairly interfered with the plaintiff's

2   rights to receive the benefits of the contract." *In re Yahoo! Inc. Customer Data Sec.*

3   *Breach Litig.*, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017).

4   ***First***, whether Solara's promises and representations in its PBOR and NOPP

5   created express or implied contracts will be determined on the face of the documents

6   and through application of common facts. Elements "essential to the existence of a

7   contract" are "[p]arties capable of contracting," "consent," a "lawful object," and

8   "sufficient cause or consideration." Cal. Civ. Code §1550. When Class members

9   purchased medical supplies from Solara, Solara warranted that it would protect their

10   privacy and confidentiality and safeguard their personal information in compliance

11   with federal law. In consideration, Solara agreed to provide the promised medical

12   supplies. In exchange, Class members provided their PII and PHI and agreed to pay

13   for Solara's products. The determination of whether these facts establish the

14   formation of an express or implied contract do not vary among Class members.

15   ***Second***, common proof will demonstrate that Class members performed under

16   the governing contracts, by paying for products and services from Solara in

17   exchange for, among other things, the protection of their PII and PHI, which Solara

18   cannot reasonably dispute.

19   ***Third***, whether Solara breached its contracts with Class members will be

20   judged by universal facts. Plaintiffs will prove that Solara's PBOR and NOPP are

21   part of their contracts with Solara. Each Class member had identical contracts with

22   Solara, and each contract was identical in its promises to safeguard users' PII and

23   PHI in accordance with federal law. The interpretation of these provisions does not

24   turn on extrinsic evidence; it is solely a judicial function. *Parsons v. Bristol Dev.*

25   *Co.*, 402 P.2d 839, 842 (Cal. 1965).

26   Common proof will also establish Solara's breach of the PBOR and NOPP by

27   failing to: (a) "protect [the] Confidentiality of your records," including "accessing

28   and disclosure of records;" and (b) "safeguard[] your personal health information

[as] required by federal law to maintain the privacy of health information." This evidence will include deposition testimony, Solara's admissions and discovery responses, expert testimony, and Solara's own documents. Common evidence will also demonstrate Solara's breach of the implied covenant of good faith and fair dealing, by showing Solara deliberately ignored the warnings about its shoddy data security from several outside consultants. Thus, a jury will be able to answer, at once, whether Solara committed a conscious and deliberate act, which unfairly frustrated the agreed common purpose of the contract, as to all Class members. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 399 (Ct. App. 1990).

### (3) Plaintiffs Prove Negligence with Common Proof

Classwide application of California law moots many of the predominance concerns nationwide negligence classes can raise. *See Marsh v. First Bank of Del.*, 2014 WL 554553, at *16 (N.D. Cal. Feb. 7, 2014) (certifying negligence class under California law). All Class members must prove the same elements to prevail on their negligence claim: (a) a duty; (b) breach of that duty; (c) causation; and (d) a cognizable injury. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

In a case such as this, where the operative conduct giving rise to both the duty and breach is uniform, Plaintiffs' negligence claim is appropriate for classwide resolution. *See Brinker*, 2021 WL 1405508, at *11 (certifying in a data-breach case a "Nationwide Class [for] Plaintiffs' negligence claim."); *Giroux v. Essex Prop. Tr., Inc.*, 2018 WL 2463107, at *4 (N.D. Cal. June 1, 2018) (granting settlement class certification where defendant's "negligence and breach were uniform as to all class members"). Each Class member was a Solara customer, each alleges their PII or PHI was unlawfully accessed, each alleges injury as a result of that access, and each suffered the same general type of damages – statutory, lost value of PII, and foreseeable losses stemming from identity theft. Thus, questions of legal duty and Solara's breach of that duty – like the questions concerning the existence and breach

1  of a contract – are common issues susceptible to common proof. *See, e.g.*, *Smith v.*
2  *Triad of Ala., LLC*, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017) (certifying
3  negligence class in data-breach suit against hospital where "each class member was
4  a non-hospital patient at Flowers, each class member alleges injury as a result of
5  Millender's records heist, . . . each class member suffered the same general type of
6  damages," and class members' claims were subject to a single state's law), *aff'd on*
7  *reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017).

8                    **(4)   California CRA & Michigan Identity**
9                           **Theft Protection Act – Failure to Notify**

10       Cal. Civ. Code §1798.82 requires timely notice to Californians of a data
11  breach. So, too, does Mich. Comp. Laws Ann. §§445.72(1)-(4). Using Solara's own
12  admissions, the November 11, 2019, letters to Class members, and evidence already
13  on record, Plaintiffs will establish that Solara violated the California CRA as to all
14  of the California Class members and the Michigan Identity Theft Protection Act
15  ("ITPA") as to all of the Michigan Class members. Common evidence shows Solara
16  knew about the Data Breach no later than June 28, 2019, and failed to notify the
17  victims for over four-and-a-half months. The November 11, 2019, letters detail the
18  data points that were stolen – including, notably, PII specifically covered under the
19  California CRA and Michigan ITPA. This is the same evidence every California and
20  Michigan Class member will use in proving liability.

21                    **(5)   Plaintiffs' UCL Claim Is Amenable to**
22                           **Common Proof**

23       Plaintiffs asserts a nationwide UCL claim based on Solara's "unfair" and
24  "unlawful" business practices. "Courts regularly find predominance satisfied and
25  certify UCL . . . class claims." *Alger v. FCA US LLC*, 334 F.R.D. 415, 425 (E.D.
26  Cal. 2020).

27       In order to prevail on their UCL claim, Plaintiffs "must show either an (1)
28  unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive,

untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003). "Relief under any of the UCL's three prongs is available without individualized proof of deception, reliance and injury, so long as the named plaintiffs demonstrate injury and causation." *Astiana*, 291 F.R.D. at 504; *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (no reliance requirement can be read into a UCL "unlawful" claim); *Svenson v. Google Inc.*, 2015 WL 1503429, at *9-10 (N.D. Cal. Apr. 1, 2015) (reliance not required for a UCL "unfair" claim that is not based in fraud).

The UCL's "unlawful" prong "proscribes anything that can be properly called a business practice and that at the same time is forbidden by law." *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016). To state a claim based on the unlawful prong, Plaintiffs must establish that Solara's "practices are forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court made." *Id.* Violations of California's CRA, as just one example, is a "predicate[] for [a] claim under the UCL's 'unlawful' prong[.]" *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014). Indeed, because a case that concerns whether or not the defendant violated a statute "presents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit[,]" certification of such a case, as here, is appropriate. *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012); *see also Sobel v. Hertz Corp.*, 674 F. App'x 663, 666 (9th Cir. 2017) (affirming class certification and noting that "[t]he case primarily concerns a question of law common to all; namely, whether Hertz's rental rate disclosures violated §482.31575").

"UCL's unfairness prong . . . requires showing a violation of established public policy or business practices that are immoral, unethical, oppressive or unscrupulous and cause injury to consumers, which outweigh its benefits." *Alger*, 334 F.R.D. at 426. California's "legislatively declared policy," *Lozano v. AT&T*

1   *Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (affirming class

2   certification), requiring the protection of personal information is well-established

3   through laws such as the California CRA, the California Consumer Protection Act,

4   the Online Privacy Protection Act ("OPPA"), and others. *See Adobe*, 66 F. Supp. 3d

5   at 1227 (agreeing the legislative intent of OPPA, California CRA, and others is

6   "protecting customer data"); *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953,

7   990 (N.D. Cal. 2016) (same).

8       Here, the question of whether Solara's conduct violates the public-policy test

9   looks to ***Solara's*** conduct, not to Plaintiffs' or the Class', and is therefore common

10  across all Class members. *See Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034,

11  1043 (S.D. Cal. 2016); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480

12  (C.D. Cal. 2012) ("[D]istrict courts in California routinely certify consumer class

13  actions arising from alleged [UCL] violations."). Because Plaintiffs' UCL claims

14  under two separate prongs can be proven by objective criteria using common

15  evidence, common issues predominate.

16          **(6)     In the Alternative, the Court May Certify
17                   a Multi-State Consumer Protection Law
                     Class**[16]

18              **(i)        Michigan's Consumer Protection
                             Act**

19

20      Plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA")

21  raises the same common factual issues and is based on the same legal theories as

22  their California UCL claim. Michigan law allows Plaintiffs to prove the MCPA

23  claim through common proof of Solara's omissions. *See* Mich. Comp. Laws Ann.

24

---

25  [16]   Assuming California law does not apply to the entire Class, there is substantial
    authority that supports the certification of multi-state consumer protection classes.
26  *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 545 (C.D. Cal. 2012);
    *Tait*, 289 F.R.D. at 486. Any "differences in laws can be handled at trial through
27  different jury instructions based on each of the separate state subclasses." *In re
    Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 346 (S.D. Cal. 2019)
28  (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 n.7 (9th Cir. 2019)

§445.903(1)(cc) (defining "[u]nfair, unconscionable, or deceptive methods, acts, or practices" to include "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"); Mich. Comp. Laws Ann. §445.903(1)(s) (defining "[u]nfair, unconscionable, or deceptive methods, acts, or practices" to include "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner"); *see also Durant v. ServiceMaster Co.*, 159 F. Supp. 2d 977, 983 (E.D. Mich. 2001) (denying motion to dismiss MCPA claim based on the defendant's alleged failure to disclose); *Van Eman v. Cars Prot. Plus*, 2007 WL 1491814, at *6 (Mich. Ct. App. May 22, 2007) (affirming trial court's denial of motion for directed verdict because the record established an issue of fact regarding "[the defendant's alleged] failure to reveal a material fact" in violation of Mich. Comp. Laws Ann. §445.903(1)(s) and (cc)); *Regnier v. Payter*, 2003 WL 21246635, at *6 (Mich. Ct. App. May 29, 2003) (affirming judgment of MCPA claims against defendant because "it could be found that defendant . . . failed to reveal a material fact" concerning the terms of the real estate transaction between the parties in violation of Mich. Comp. Laws Ann. §§445.903(1)(s) and (cc)); *Temborius v. Slatkin*, 403 N.W.2d 821, 827 (Mich. Ct. App. 1986) (affirming judgment of MCPA claims against defendant because "[t]he failure to inform plaintiff that Motor City was having financial difficulties . . . would constitute a failure to reveal a material fact tending to mislead the consumer under subsection (s), and it also constitutes failure to reveal facts which are material in light of positive representations under subsection (cc)").

The causation requirement, moreover, is satisfied by a showing that Solara's misconduct was a "substantial factor" in causing Plaintiffs' injuries; it need not be the sole cause. *See Allen v. Owens-Corning Fiberglas Corp.*, 571 N.W.2d 530, 533 (Mich. Ct. App. 1997) (under Michigan law, "a defendant cannot escape liability for its negligent conduct simply because the negligence of others may also have

4845-0377-9824

1    contributed to the injury suffered by a plaintiff," and "[w]hen a number of factors

2    contribute to produce an injury, one actor's negligence will be considered a

3    proximate cause of the harm if it was a substantial factor in producing the injury");

4    *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) ("Michigan .

5    . . recognizes that multiple causes can be substantial factors leading to injury.").

6          Courts applying Michigan law have certified classes involving consumer

7    protection claims based on a manufacturer's uniform failure to disclose material

8    facts. In *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010),

9    the Ninth Circuit certified a Michigan class asserting MCPA claims based on

10   allegations of a uniform defect in the defendant's vehicles and the defendant's failure

11   to disclose the defect to its customers. *Id.* at 1173. The court found that, with respect

12   to the plaintiffs' omissions-based MCPA claims, "[c]ommon issues predominate

13   such as whether [the defendant] was aware of the existence of the alleged defect,

14   whether [it] had a duty to disclose its knowledge and whether it violated consumer

15   protection laws when it failed to do so." *Id.*; *see also Gasperoni v. Metabolife Int'l,*

16   *Inc.*, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000) (certifying a Michigan

17   class for MCPA claims against manufacturer of appetite suppressant because

18   common questions concerning the defendant's alleged misrepresentations and

19   omissions about the product predominated over individual ones); *Dix v. Am. Bankers*

20   *Life Assurance Co. of Fla.*, 415 N.W.2d 206, 207, 210 (Mich. 1987) (reversing

21   denial of class certification for MCPA claims based on the defendants' alleged

22   misrepresentations and omissions concerning tax-shelter annuity policies because

23   "[t]he plaintiffs allege a common scheme of misrepresentation" and the

24   misrepresentations made to each plaintiff "all stem from the same pattern of

25   misrepresentation, and . . . are actionable under the [MCPA]").

26         The MCPA claim raises the same common factual and legal issues as the UCL

27   claim and likewise satisfy the predominance requirement.

28

4845-0377-9824

1

2

**(ii)      North Carolina's Deceptive Trade Practices Act**

3      Plaintiffs' claim under North Carolina's Unfair and Deceptive Trade Practices

4  Act ("NCDTPA"), N.C. Gen. Stat. §75-1.1, *et seq.*, is virtually identical to their

5  claim under the MCPA, in that it focuses on common proof of Solara's omissions

6  regarding its data security practices. Plaintiffs have amassed ample common

7  evidence to prove the elements of their NCDTPA claim on a classwide basis, *to-wit*:

8  (a) defendant committed an unfair or deceptive act or practice; (b) the action was in

9  or affecting commerce; and (c) the act proximately caused injury to plaintiff. *Dalton*

10 *v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). A trade practice is "unfair" when it

11 "offends established public policy as well as when the practice is immoral, unethical,

12 oppressive, unscrupulous, or substantially injurious to consumers." *Eley v. Mid/East*

13 *Acceptance Corp. of N.C., Inc.*, 614 S.E.2d 555, 561 (N.C. Ct. App. 2005).

14 Deliberate acts of deceit or bad faith do not have to be shown; rather, a plaintiff need

15 only demonstrate that the act possessed the tendency or capacity to mislead or

16 created the likelihood of deception. *Boyd v. Drum*, 501 S.E.2d 91, 97 (N.C. Ct. App.

17 1998). The "relevant gauge" of an act's unfairness or deception is "[t]he effect of

18 the actor's conduct on the marketplace." *Ken-Mar Fin. v. Harvey*, 368 S.E.2d 646,

19 648 (N.C. Ct. App. 1988). As with other unfair trade laws, in determining whether a

20 representation [or omission] is deceptive, its effect on the average consumer is

21 considered." *Canady v. Mann*, 419 S.E.2d 597, 602 (N.C. Ct. App. 1992).

22     Here, whether Solara's failure to disclose its systemic data security problems

23 constitutes an "unfair" or "deceptive" practice is an issue common to North Carolina

24 Class members. *See Friedland v. Coastal Healthcare Grp., Inc.*, 1996 U.S. Dist.

25 LEXIS 16088, at *12 (M.D.N.C. Sept. 12, 1996) (granting class certification); *Bear*

26 *Hollow, LLC v. Moberk, LLC*, 2006 WL 1642126, at *6-7 (W.D.N.C. June 5, 2006)

27 (reliance implied for a nondisclosure of a material fact); *see also Everts v. Parkinson*,

28 555 S.E.2d 667, 674-75 (N.C. Ct. App. 2001) (same). Thus, under the NCDTPA,

neither actual deception nor reliance is required. *Cullen v. Valley Forge Life Ins. Co.*, 589 S.E.2d 423, 431 (N.C. Ct. App. 2003) (finding that "the statutory language of N.C. Gen. Stat. §75-1.1 [does not] require reliance in order to show causation," and since "actual deception is not an element necessary under N.C. Gen. Stat. §75-1.1 … actual reliance is not a factor"); *see also S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 284 F.3d 518, 538 (4th Cir. 2002) ("[W]e see [Stroud Group's] non-disclosure . . . as sufficiently egregious to constitute an unfair trade practice under the [NCDTPA]."). And here again, the causation requirement is satisfied by a showing that Solara's misconduct was a "substantial factor" in causing Plaintiffs' injuries; as in Michigan, it need not be the sole cause. *See, e.g.*, *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1444 (E.D.N.C. 1986); N.C. Pattern Jury Instructions §813.70. The North Carolina consumer protection claims raise the same common factual and legal issues as the Michigan claims and likewise satisfy the predominance requirement.

### b. Plaintiffs' Alternative Unjust Enrichment Claim Is Amenable to Common Proof

As this Court has previously held, "quasi-contract claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana*, 291 F.R.D. at 505; *accord Beck-Ellman*, 283 F.R.D. at 568 (same). The reason being that "quasi-contract . . . claims raise common factual and legal issues that predominate over individual issues." *Id.* at 505-06. Other courts are in accord. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1001 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (certifying Illinois unjust enrichment claim, among others); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010) (certifying California unjust enrichment claim); *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923-27 (10th Cir. 2018) (explaining that the predominance

1  requirement does not prohibit class certification of unjust enrichment claims).[17]

2  Here, Plaintiffs allege that Solara has been unjustly enriched through its

3  receipt of unlawful and inequitable proceeds from the sale of medical supplies to

4  Plaintiffs and the Class, without having implemented the promised and legally

5  mandated adequate data privacy and security practices and procedures. The facts and

6  law supporting the improper retention of proceeds from those sales are the same

7  without regard to individualized circumstances, and Plaintiffs have proposed an

8  equitable disgorgement methodology tethered to their unjust enrichment theory. *See*

9  Expert Report of Gary Olsen ("Olsen Rpt."), ¶¶59-67, Ex. 62; Rebuttal Report of

10  Gary Olsen ("Olsen Rebuttal"), ¶¶7-12, Ex. 63.

11  **c.  Plaintiffs Will Establish and Calculate Damages
     with Common Proof and Methodologies**

12

13  "[T]he individual nature of damages does not overcome the predominance of

14  common issues regarding liability." *Astiana*, 291 F.R.D. at 506; *accord Beck-*

15  *Ellman*, 283 F.R.D. at 569 (same). Indeed, "[t]he amount of damages is invariably

16  an individual question and does not defeat class action treatment." *Astiana*, 291

17  F.R.D. at 506 (citing *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir.

18  2013)). Nevertheless, consistent with the holding in *Comcast*, 569 U.S. at 38, "[a]t

19

20  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[17]  If the Court does not find that California law applies nationwide, the Court may

21  certify a multi-state class for unjust enrichment. *See Hoving v. Laws. Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (certifying multistate class for unjust

22  enrichment claim); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) (explaining that the "universal thread throughout all common law

23  causes of action for unjust enrichment" is a "focus on the gains of the defendants, not the losses of the plaintiffs"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278-

24  80 (D. Mass. 2004) (finding common law claims for unjust enrichment in North Carolina, Arizona, California, Florida, Kansas, Maine, Michigan, Massachusetts,

25  Minnesota, New York, Tennessee, and Vermont are substantially similar and contain same core requirements); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla.

26  1998) (acknowledging that courts regard state claims for unjust enrichment as "universally recognized causes of action that are materially the same throughout the

27  United States"); *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010). Indeed, the elements of Plaintiffs' unjust enrichment claim are virtually the same.

28  *See* Elements of Unjust Enrichment Claim by State, Ex. 61.

1   class certification, [a] plaintiff must present a ***likely method*** for determining class

2   damages, though it is not necessary to show that his method will work with certainty

3   at this time." *Astiana*, 291 F.R.D. at 506. And, "[i]f individual issues as to how much

4   reward each class member is entitled later predominate, the Court can address such

5   concerns at that time." *Id.*

6                          **(1)   Statutory Damages**

7             Under the CMIA, Plaintiffs and the Class members whose PHI was breached

8   at Solara are entitled to statutory damages of $1,000 per violation. *See* Cal. Civ.

9   Code §§56.35-36. The fact that statutory damages are available under the CMIA

10  demonstrates that, at least for Plaintiffs' CMIA claim, damages can be easily

11  calculated on a class-wide basis using simple arithmetic. Olsen Rpt., ¶¶78-80, Ex.

12  62. Solara's expert agrees. *See* Expert Report of Daniel J. Slottje, Ph.D. at 62, ¶115

13  (noting that statutory-damages calculations is "a mechanical calculation that is basic

14  arithmetic."). Courts in the Ninth Circuit have repeatedly certified claims brought

15  under statutes that, like the CMIA, provide for an award of statutory damages. *See,*

16  *e.g.*, *Golden v. Am. Pro Energy*, 2017 WL 10573989, at *3 (C.D. Cal. May 11, 2017)

17  ("[T]he Telephone Consumer Protection Act provides for a uniform measure of

18  statutory damages, meaning that even at the damages stage common issues will

19  predominate."); *Schuchardt v. Law Off. of Rory W. Clark*, 2016 WL 232435, at *6

20  (N.D. Cal. Jan. 20, 2016) (finding predominance satisfied because "[i]f the Court

21  were to find that the [defendant violated the statute], that single adjudication would

22  reach the claims of all Class Members"); *Gold v. Midland Credit Mgmt., Inc.*, 306

23  F.R.D. 623, 633-34 (N.D. Cal. 2014) ("At bottom, the broad remedial purpose of the

24  [Fair Debt Collection Practice Act] compels [the] conclu[sion] that the Rule 23(b)(3)

25  requirement of predominance is satisfied where, as here, statutory damages are

26  sought[.]"); *In re Toys "R" Us - Del., Inc. - FACTA Litig.*, 300 F.R.D. 347, 377 (C.D.

27  Cal. 2013) ("Courts have been more willing to find predominance where … the class

28

4845-0377-9824

1   seeks only statutory damages.").[18]

2          Indeed, our Circuit has expressly held that even where statutory damages may

3   appear to be disproportionate to the harm suffered, "[t]o the extent that statutory

4   damages also serve a deterrent purpose, a court undermines that purpose in denying

5   class certification on the basis of the proportionality of actual harm and statutory

6   liability." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010).[19]

7                      **(2)     Lost Value in PII & PHI**

8          Plaintiffs may establish classwide causation for lost value in Class members'

9   PII and PHI by showing Solara's conduct meets California's "substantial factor"

10  test. *See Mitchell v. Gonzales*, 819 P.2d 872, 873 n.2, 878 (Cal. 1991) (negligence);

11  *In re San Jose Airport Hotel, LLC*, 2018 WL 1426702, at *5 (N.D. Cal. Mar. 22,

12  2018) (contract). "The substantial factor standard . . . has been embraced as a clearer

13  rule of causation – one which subsumes the 'but for' test while reaching beyond it

14  to satisfactorily address other situations, such as those involving independent or

15  concurrent causes in fact." *Rutherford v. Owens-Ill., Inc.*, 941 P.2d 1203, 1214 (Cal.

16  1997). Under this standard, a cause in fact is found where defendant's conduct was

17  a substantial factor in bringing about the injury. *Mitchell*, 819 P.2d at 878-89; *see*

18  *also Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1172 (E.D. Cal.

19  2009).

20         A defendant's conduct "must be more than a remote or trivial factor." Judicial

21  Council of California Civil Jury Instruction ("CACI") 430 (2020). However, even

22

23  [18]  *See also Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 169-72 (5th Cir. 2015)
    (affirming district court's certification of a class seeking statutory damages for
24  violation of Electronic Funds Transfer Act's ATM fee notice requirements); *Dreher
    v. Experian Info. Sols., Inc.*, 2014 WL 2800766, at *3 (E.D. Va. June 19, 2014)
25  ("Because the common issue of liability predominates over the question of how to
    best apportion statutory damages, [plaintiff's] proposed class satisfies Rule
26  23(b)(3)'s predominance requirement.").

    [19]  *See also id.* at 722 ("If the size of a defendant's potential liability alone was a
27  sufficient reason to deny class certification, however, the very purpose of Rule
    23(b)(3) – to allow integration of numerous small individual claims into a single
28  powerful unit – would be substantially undermined.").

1  "a very minor force that [] cause[s] harm is a substantial factor." *Bockrath v. Aldrich*

2  *Chem. Co.*, 980 P.2d 398, 404 (Cal. 1999). And, it "does not have to be the only

3  cause of the harm." CACI 435. A defendant's conduct can be a substantial factor

4  even where harm is caused by a third party. *See Liberty Surplus Ins. Corp. v.*

5  *Ledesma & Meyer Constr. Co.*, 418 P.3d 400, 404-05 (Cal. 2018) (finding a

6  company's negligent hiring could be a substantial factor in sexual molestation by

7  one of its employees); *see also* RESTATEMENT (SECOND) OF TORTS §448 (1965).

8      Plaintiffs will use the expert testimony of Mary T. Frantz and Gary Olsen, as

9  well as the evidence gathered to date, to show that Solara's inadequate safeguarding

10  of Plaintiffs' PII and PHI was a substantial factor in causing them to be deprived of

11  value in their PII and PHI. Specifically, Plaintiffs will show that Solara's inadequate

12  security compromised their sensitive personal information and was a substantial

13  factor in causing the Data Breach. *See generally* Frantz Decl., Ex. 9. Plaintiffs will

14  also use the notices Solara sent to Class members, expert testimony, and common

15  evidence to prove that their PII and PHI was unlawfully accessed during the Data

16  Breach. *Id.* Next, Plaintiffs will use expert testimony to prove that the data accessed

17  in the Data Breach has significant, inherent, and measurable value and that Class

18  members were deprived of some of that value as a result of the Data Breach. *See*

19  Olsen Rpt., ¶¶27-58, 68-72, Ex. 62; Olsen Rebuttal, ¶21, Ex. 63.

20      Using an expert valuation of Plaintiffs' PII and PHI as a basis to calculate the

21  aggregate deprivation value of PII and PHI for the Class is a proper and established

22  method of determining class damages. *See Villalpando v. Exel Direct Inc.*, 2016 WL

23  1598663, at *14 (N.D. Cal. Apr. 21, 2016) ("'[R]epresentative testimony, surveys,

24  and statistical analysis all are available as tools to render manageable determinations

25  of the extent of liability.'"); *see also In re Est. of Marcos Hum. Rts. Litig.*, 910 F.

26  Supp. 1460, 1464 (D. Haw. 1995) ("The use of aggregate procedures, with the help

27  of an expert in the field of inferential statistics, for the purpose of determining class

28  compensatory damages is proper."), *aff'd sub nom. Hilao v. Est. of Marcos*, 103 F.3d

767 (9th Cir. 1996). Plaintiffs' damages expert, Gary Olsen, proposes a market-based approach to ascertaining Class members' damages resulting from the deprivation of value of their PII and PHI as a result of the Data Breach. Under this approach, sources of market-based transactions are analyzed to value the access to the PII and PHI based on comparable transactions involving similar, or in some cases the same, PII and PHI. *See* Olsen Rpt., ¶¶68-72, Ex. 62; Olsen Rebuttal, ¶21, Ex. 63.

Clearly, this method of calculating damages is tied to Plaintiffs' theory of liability, and the representative evidence is "reliable and the inferences to be drawn . . . [are] just and reasonable in light of the facts of this case." *McLeod v. Bank of Am., N.A.*, 2017 WL 6373020, at *17 n.24 (N.D. Cal. Dec. 13, 2017); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (holding statistical evidence can be used to fill in evidentiary gaps created by defendants' own misconduct). And although Plaintiffs, through their experts, have met their burden of demonstrating that a viable method for determining classwide damages exists, any perceived shortcoming does not defeat certification. *See Jimenez v. Allstate Ins. Co.* (*Jimenez I*), 2012 WL 1366052, at *15 (C.D. Cal. Apr. 18, 2012).

Finally, Plaintiffs' proposed model affords Solara an adequate opportunity to litigate its affirmative defenses by attacking the reliability of the model, rather than through cross-examining individual Class members. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016).

### (3)   UCL and Unjust Enrichment Disgorgement

"[D]isgorgement is a remedy intended to prevent a wrongdoer from unjust enrichment." *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1088 (9th Cir. 2003); 1 Dan B. Dobbs, Law of Remedies §4.5(5) (2d ed. 1993) (stating that disgorgement is limited to the amount of the unjust enrichment); *see also In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) (nonrestitutionary disgorgement is a form of relief that "focuses on the defendant's unjust enrichment"). Moreover, restitutionary

4845-0377-9824

1   disgorgement, or "monies that [Solara] … wrongfully collected from the plaintiffs,

2   and any interest [Solara] may have earned on these monies" is an available remedy

3   under the UCL. *Juarez v. Arcadia Fin. Ltd.*, 152 Cal. App. 4th 889, 914-15 (2007).

4          Here, Plaintiffs seek both forms of disgorgement. Plaintiffs seek restitutionary

5   disgorgement of the amounts Class members overpaid for Solara products. *See* Olsen

6   Rpt., ¶¶59-67, Ex. 62; Olsen Rebuttal, ¶¶7-12, Ex. 63. Consistent with *Comcast*,

7   Plaintiffs' expert Gary Olsen had provided a methodology for calculating the amount

8   of Class members' overpayments to Solara based on the "difference between what

9   Solara should have spent on IT security versus what it actually spent on IT security,"

10  thus "quantif[ying] Solara's unjust enrichment at the expense of the Class

11  Members." Olsen Rpt., ¶65, Ex. 62.

12         Additionally, Plaintiffs' seek nonrestitutionary disgorgement based on

13  Solara's unjust enrichment – *i.e.*, Solara's inequitable profits from the sale of

14  products to Class members without the promises and statutorily required data

15  security. *Id.*, ¶¶60-64. Mr. Olsen's method can be applied to all Solara's customers

16  without the need for individualized inquiry. *Id.*

17                          **(4)   Identity Theft Losses**

18         It is undisputed that data breaches can cause identity theft. *See Stollenwerk v.

19  Tri-West Health Care All.*, 254 F. App'x 664, 668 (9th Cir. 2007) ("[T]heft of a

20  computer hard drive [containing PII] certainly ***can*** result in an attempt by a thief to

21  access the contents for purposes of identity fraud.") (alteration in original). Other

22  courts also have concluded that it is plausible a data breach is the casual factor in

23  injuries related to identity theft. *In re Yahoo!*, 2017 WL 3727318, at *18; *In re

24  Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *16 (N.D. Cal. May 27,

25  2016); *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018).

26         Plaintiffs can establish both a temporal and a logical connection between the

27  Data Breach and Class members' injuries. Temporally, the identity theft must follow

28  the breach in which a Class members' PII or PHI was accessed. This point can be

1  addressed through a basic claims process. Whether the common PII or PHI stolen

2  was the same kind needed to commit the identity theft suffered by any Class member

3  is "a matter of common knowledge from which a jury could reasonably draw

4  inferences regarding its probative value in establishing causation." *Stollenwerk*, 254

5  F. App'x at 667. Taken together with the facts that are common to all Class members,

6  discussed here and above, these data points go well beyond loose, merely temporal

7  connections and establish a logical connection between the Data Breach and Class

8  members' harms. All Class members' PII and PHI was actually accessed by thieves,

9  who can now sell and resell that information on the dark web to other bad actors,

10  who in turn buy it for the explicit purpose of causing the harm Class members

11  suffered. In this context, and in the light of their significantly increased risk of future

12  harm, Class members' purchases of credit mitigation services were the logical and

13  foreseeable results of the Data Breach, as were their losses suffered through identity

14  theft. Olsen Rpt., ¶¶73-77, Ex. 62; Olsen Rebuttal, ¶¶15-19, Ex. 63.

15  This case differs markedly from other data breach cases where the

16  individualized nature of causation defeated predominance. Here, the PII and PHI

17  accessed was broad in scope, easy to obtain, use, and re-use (for years), and is

18  unchangeable – giving thieves the simplest, most effective way to commit fraud.

19  Thus, Plaintiffs offer the same causation proof that the Class would need to offer.

20  While it is possible that a particular Class member's claim for losses stemming

21  from identity theft will require more individual determination, these instances are

22  likely to be isolated and few and, therefore, do not defeat predominance. *See Smith*,

23  2017 WL 1044692, at *13 (common issues of duty and breach in data breach case

24  were "pivotal to the resolution of the litigation, and therefore predominate[d] despite

25  individualized questions of causation and damages"). As with lost value, statistical

26  evidence can be used to determine the aggregate damages relating to identity theft

27  by calculating the average user's out-of-pocket costs and required hours for identity

28  fraud resolution during the applicable risk period.

4845-0377-9824

1
2

### 2. A Class Action Is Superior to Tens of Thousands of Expensive Trials

3        Certification of Plaintiffs' claims would be "superior to other available
4   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.
5   23(b)(3). Indeed, this is the kind of case for which the class action procedure was
6   created. First, any Class member's individual recovery, regardless of the availability
7   of $1,000 in statutory damages under the CMIA, would be dwarfed by the cost of
8   proving the predominating issues in this complex case. *Soares v. Flowers Foods,*
9   *Inc.*, 320 F.R.D. 464, 485 (N.D. Cal. 2017) (Rule 23(b)(3)(A) "only weighs against
10  class certification where individual damages run high such that individual class
11  members have a strong interest in making individual decisions on whether and when
12  to settle."). Second, because there are no other cases relating to the Solara breach
13  currently pending in the United States, Rule 23(b)(3)(B) weighs in favor of
14  certification. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir.
15  2001). Third, several of Plaintiffs' claims require the application of California law
16  class-wide. *See* Fed. R. Civ. P. 23(b)(3)(C).

17       Fourth, the issues presented in this class litigation are manageable. *See* Fed.
18  R. Civ. P. 23(b)(3)(D). Though individualized determinations of causation and
19  damages may be necessary in some limited circumstances, the class-action device
20  still presents far fewer management difficulties than individually litigating the
21  claims of hundreds of thousands of consumers. *Smith*, 2017 WL 1044692, at *14
22  ("[T]he burden of corralling [a] run of mini-trials [on causation and damages linked
23  to data theft] shrinks in comparison to the burden of conducting a full-blown trial on
24  every issue contained in every cause of action, for every class member."). A class
25  action provides the benefits of single adjudication, economies of scale, and
26  comprehensive supervision by a single court. Individualized litigation would create
27  a potential for inconsistent or contradictory judgments on the issues Plaintiffs seek
28  to certify here (including, most notably, whether Solara's internal policies and

4845-0377-9824

1    security protocols were adequate to safeguard its customers' PII and PHI), and

2    would increase the delay and expense to all parties and the court system.

3         Moreover, "[c]ourts retain discretion to shape the proceedings and could

4    ultimately choose an option such as the use of individual claim forms or the

5    appointment of a special master, which plainly would allow [d]efendants to raise any

6    defenses they may have to individual claims." *Jimenez v. Allstate Ins. Co.* (*Jimenez*

7    *II*), 765 F.3d 1161, 1169 (9th Cir. 2014) (affirming bifurcated process where

8    "statistical analysis [was] capable of leading to a fair determination of [defendant's]

9    liability" and individualized damages hearings "preserved the rights of defendant to

10   present its damages defenses on an individual basis"). Here, damages can be easily

11   calculated using two straightforward methods. First, using simple math, the number

12   of Class members whose PHI was accessed due to the breach can be multiplied by

13   $1,000 in statutory damages under the CMIA. Second, the number of Class members

14   can be divided by an aggregate damages judgment based on the lost value of the

15   Class' PII and PHI, Solara's unjust enrichment, and identity theft damages. *See*

16   *generally* Olsen Rpt., Ex. 62. Third, a simple claims process can be utilized, whereby

17   Class members submit receipts for and testify as to their losses stemming from

18   identity theft. *Just Film*, 847 F.3d at 1120-21. In any event, the common liability

19   questions are sufficient to support class certification. *Tyson Foods*, 577 U.S. at 453.

20        Next, notice will not be cumbersome. Each Class member can be contacted

21   directly by U.S. Mail using Solara's records (in the same way notification of the

22   breach was eventually sent), or by publication for Class members who may have

23   moved, if their new address is not contained in the U.S. Postal Service's records.

24   Moreover, since Class members can easily be verified using data maintained by

25   Solara, the claims process should be relatively straightforward. *Id.*

26        Finally, while ascertainability is not a requirement in the Ninth Circuit,

27   *Briseno*, 844 F.3d at 1133, the manageability problems that often plague certification

28   simply do not exist here. Solara has already identified (and sent notices to) customers

1  whose PII or PHI was breached.[20]

2  **D.   Rule 23(b)(2) Certification of an Injunctive Relief Class Is Appropriate**

3

4        As provided under the UCL,[21] Plaintiffs request certification of the Class for

5  the specific injunctive relief outlined in the report of Plaintiffs' information security

6  expert. Frantz Decl., §VI, Ex. 9. Class members' claims arise under two prongs of

7  the UCL: (1) unlawful, for violating, *inter alia*, Cal. Civ. Code §1798.81.5(b),

8  Section 5(a) of the FTC Act, 15 U.S.C. §45(a), Cal. Bus. & Prof. Code § 22576 (as

9  a result of Solara failing to comply with its own posted privacy policies), and the

10  CMIA, Cal. Civ. Code §56, *et seq*.; and (2) unfair, for failing to employ adequate

11  safeguards to protect users' PII and PHI.[22]

12        Under Rule 23(b)(2), it is "sufficient if class members complain of a pattern

13  or practice that is generally applicable to the class as a whole." *In re Yahoo Mail*

14  *Litig.*, 308 F.R.D. 577, 598 (N.D. Cal. 2015) (quoting *Walters v. Reno*, 145 F.3d

15

16  [20]  Should the Court determine that individualized issues of causation or damages
17  overwhelm common questions, Plaintiffs request that the Court certify certain class-
    wide issues that will drive the resolution of this case. The Court may certify issues
18  under Rule 23(b)(3) and (c)(4) if it materially advances the litigation as a whole, the
    aim being to achieve "judicial economy and efficiency." *Kamakahi v. Am. Soc'y for*
19  *Reprod. Med.*, 305 F.R.D. 164, 193 (N.D. Cal. 2015); *see also Valentino v. Carter-*
    *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (affirming district courts' ability
20  to certify common issues under Rule 23(c)(4); *Jimenez II*, 765 F.3d at 1168 (noting
    that the circuit courts' decisions approving issue certification in *In re Deepwater*
21  *Horizon*, 739 F.3d 790, 817 (5th Cir. 2014), *Butler v. Sears, Roebuck & Co.*, 727
    F.3d 796, 800 (7th Cir. 2013), *In re Whirlpool Corp. Front-Loading Washer Prods.*
22  *Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013), "are compelling. And their reasoning
    is consistent with our circuit precedent[.]"); *Tasion Commc'ns, Inc. v. Ubiquiti*
23  *Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015) ("[A] Rule 23(c)(4) issues
    class must still meet the requirements of Rule 23(a) and (b) (except for
    predominance requirement of Rule 23(b)(3)).").
24  [21]  Cal. Bus. & Prof. Code §§17203, 17204. Other state consumer protection laws
25  similarly provide for injunctive relief. *See* Conn. Gen. Stat. §42-110g; Mich. Comp.
    Laws Ann. §445.911.
26  [22]  The Connecticut Unfair Trade Practices Act and MCPA also prohibit unlawful
27  or unfair business practices, Conn. Gen. Stat. §42-110b.; Mich. Comp. Laws Ann.
    §445.903, and are governed by the "reasonable consumer" standard. *Langan v.*
28  *Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 290 (D. Conn. 2015); *Dix*,
    415 N.W.2d at 206.

1   1032, 1047 (9th Cir. 1998)). "Even if some class members have not been injured by

2   the challenged practice, a class may nevertheless be appropriate." *Id.* "Unlike Rule

3   23(b)(3), a plaintiff does not need to show predominance of common issues or

4   superiority of class adjudication to certify a Rule 23(b)(2) class." *Yahoo Mail*, 308

5   F.R.D. at 598; *see also Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at

6   *10 (N.D. Cal. May 30, 2014) ("there is no need [in evaluating a Rule 23(b)(2) class]

7   'to undertake a case-specific inquiry into whether class issues must predominate or

8   whether class action is the superior method of adjudicating the dispute'[.]") (quoting

9   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63 (2011)).

10   Plaintiffs challenge a pattern or practice that is generally applicable to all

11   Class members under the UCL. Plaintiffs contend all Class members provided PII

12   and PHI to Solara when purchasing medical device products. As discussed, Solara

13   failed to adequately safeguard that PII and PHI, and continues to do so. Specifically,

14   Solara maintains and stores Class members' PII and PHI in its computer network

15   and, as the evidence undoubtedly demonstrates, has failed to take the steps necessary

16   to prevent and stop unauthorized access to that network.

17   As the record evidence in this case makes clear, from **at least** 2017, Solara

18   had a uniform practice of: (1) failing to comply with HIPAA; (2) failing to comply

19   with PCI-DSS; (3) failing to comply with the CMIA; (4) ███████████████

20   ████████████████████████████████████████ (5)

21   ████████████████████████████████████████████

22   ████████████ (6) ███████████████████████████

23   ██████████████████████████ and (7) ████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████

26   ██████████████████████████. *See generally* Frantz Decl., Ex. 9

27   Discovery in this case (which is still ongoing) shows these failings were

28   uniform across the Class, persistent and systemic throughout the relevant time

1   period, and directly impacted the security of all Class members' PII and PHI. This

2   included Solara's ███████████████████████████████ which ███████████

3   ███████████████████████████████████████████████

4        Because Solara's company-wide policies and failures were uniform and

5   persistent through the entire relevant time period, and continue to significantly

6   increase the risk of harm to all Class members, Rule 23(b)(2) certification is

7   particularly apt here. *See Parsons v. Ryan*, 754 F.3d 657, 688-89 (9th Cir. 2014)

8   (affirming certification seeking injunction of systemic deficiencies in policies and

9   practices that put all plaintiffs at substantial risk of harm).[23]

10       *Yahoo Mail* is instructive. There, the plaintiffs asked this Court to certify a

11  class of non-Yahoo mail subscribers to enjoin Yahoo from intercepting and scanning

12  non-Yahoo mail subscribers' emails to Yahoo users. Though the same policy applied

13  to all non-Yahoo mail subscribers, Yahoo argued that the issue of whether

14  individualized users consented to the interception precluded certification. Judge Koh

15  rejected Yahoo's argument, noting the focus of a Rule 23(b)(2) analysis is "not on

16  the claims of individual class members, but rather whether [Defendant] engaged in

17  a common policy." *Yahoo Mail*, 308 F.R.D. at 599.

18       Same goes for *Adkins*. There, the "plaintiff [sought, among other things,

19  certification of an] injunctive relief [class] . . . under Rule 23(b)(2), namely plaintiff

20  seeks certain changes to Facebook's security practices to ensure no further harm

21  comes to its users." 424 F. Supp. 3d at 690. Judge Alsup granted class certification

22  under Rule 23(b)(2), concluding,

23       the requested [injunctive] relief of an order compelling Facebook to
         promptly correct any problems or issues detected by . . . third-party

24

---

25  [23] "[P]laintiffs [need not] specify the precise injunctive relief they will ultimately
     seek at the class certification stage." *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686,
26  698 (N.D. Cal. 2019) (citing *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 972 (9th
     Cir. 2019)) (certifying Rule 23(b)(2) injunctive relief class). That said, Plaintiffs'
27  expert Mary T. Frantz has provided an expert opinion regarding the precise contours
     of permanent injunctive relief that would be appropriate in this case. Frantz Decl.,
28  ¶¶30-39, Ex. 9.

1
2
3

security auditors outlines the "general contours" of the requested injunction at this stage. A more specific remedy can be fashioned later in this litigation. Facebook ultimately has not sufficiently shown otherwise that crafting uniform injunctive relief will be impossible.

4    *Id.* at 698.

5    Likewise, here, Plaintiffs challenge Solara's practice of inadequately

6    safeguarding Class members' PII and PHI and, therefore, "seek uniform relief from

7    a practice applicable to the entire class." *Yahoo Mail*, 308 F.R.D. at 600; *see also*

8    *Adkins*, 424 F. Supp. 3d at 698 ("[O]rdinarily [Rule 23(b)(2)] will be satisfied when

9    plaintiffs have described the general contours of an injunction that would provide

10   relief to the whole class") (quoting *Parsons*, 754 F.3d at 689 n.35). Thus, Rule

11   23(b)(2) certification is appropriate here, even if some Class members do not

12   ultimately have viable consumer protection claims. *See Yahoo Mail*, 308 F.R.D. at

13   600. And, as in *Yahoo Mail*, because the equitable relief Plaintiffs seek is identical

14   across the Class, it may be properly sought through a Rule 23(b)(2) class. *Id.* at 600-

15   01 (injunction "requiring Yahoo to obtain a class member's consent prior to scanning

16   … emails" did not violate the indivisibility requirement of Rule 23(b)(2), which

17   "precludes certification where 'each individual class member would be entitled to a

18   different injunction or declaratory judgment against the defendant'") (quoting

19   *Dukes*, 564 U.S. at 360).

20   **IV.   CONCLUSION**

21   For the foregoing reasons, Plaintiffs respectfully request that the Court grant

22   Plaintiffs' Motion for Class Certification.

23
24
25
26
27
28

4845-0377-9824

DATED:  July 2, 2021

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBBINS GELLER RUDMAN
 & DOWD LLP
STUART A. DAVIDSON
DOROTHY P. ANTULLIS
BRADLEY M. BEALL


_s/Stuart A. Davidson_
STUART A. DAVIDSON

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
bbeall@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
rachelj@rgrdlaw.com

FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN
A. BROOKE MURPHY
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  405/235-1560
405/239-2112 (fax)
WBF@federmanlaw.com
ABM@federmanlaw.com

Interim Co-Lead Counsel for Plaintiffs

ABINGTON COLE + ELLERY
CORNELIUS P. DUKELOW
320 South Boston Avenue, Suite 1130
Tulsa, OK  74103
Telephone:  918/588-3400
cdukelow@abingtonlaw.com

4845-0377-9824

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREEN & NOBLIN, P.C.
JAMES R. NOBLIN
4500 East Pacific Coast Highway
4th Floor
Long Beach, CA  90804
Telephone:  562/391-2487
415/477-6710 (fax)
gn@classcounsel.com

GREEN & NOBLIN, P.C.
ROBERT S. GREEN
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  415/477-6700
415/477-6710 (fax)
gn@classcounsel.com

CARLSON LYNCH LLP
KELLY K. IVERSON
ERIC D. ZARD
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412/322-9243
412/231-0246 (fax)
kiverson@carlsonlynch.com
ezard@carlsonlynch.com

Interim Class Counsel for Plaintiffs

4845-0377-9824