1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   In re SOLARA MEDICAL SUPPLIES
     DATA BREACH LITIGATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Case No.:  3:19-cv-02284-H-KSC

**ORDER:**

**(1) CERTIFYING CLASS FOR
    SETTLEMENT PURPOSES;**

**(2) PRELIMINARILY APPROVING
    CLASS SETTLEMENT;**

**(3) APPOINTING CLASS
    REPRESENTATIVEs AND
    COUNSEL;**

**(4) APPROVING CLASS NOTICE;
    and**

**(5) SCHEDULING FINAL
    APPROVAL HEARING**

[Doc. No. 142.]

27       On January 25, 2022, Plaintiffs Juan Maldonado, Adam William Bickford, Jeffrey

28   Harris, Alex Mercado, Thomas Wardrop, and Kristi Keally, as legal guardian of a minor

1

1   child whose initials are M.K. (collectively, "Plaintiffs") filed an unopposed motion for

2   preliminary approval of class action settlement and directing dissemination of notice to

3   the class. (Doc. No. 142.) On April 18, 2022, the Court held a hearing on the matter.

4   Amanda Brooke Murphy and Stuart A. Davidson appeared on behalf of Plaintiffs. Heidi

5   S. Inman appeared on behalf of Defendant Solara ("Defendant"). For the following

6   reasons, the Court grants Plaintiffs' motion and sets a schedule for further proceedings.

7   **Background**

8   **I.      Factual and Procedural Background**

9          Defendant is a direct-to-consumer supplier of medical devices related to the care of

10   diabetes and a registered pharmacy in the state of California. (Doc. No. 43 ¶1.) Plaintiffs

11   are six individuals who allege that their personal and medical information was exposed

12   after Defendant's computer systems were compromised by hackers. (Doc. No. 142-1 at

13   2.) Specifically, Plaintiffs allege that between April 2, 2019 and June 20, 2019, hackers

14   were able to gain access to Defendant's computer systems, which contained personal

15   identifying information ("PII") and protected health information ("PHI") of tens of

16   thousands of individuals (the "Data Breach"). (Id.) This information allegedly included

17   114, 210 names; 105,681 dates of birth; 64,232 instances of billing/claims information;

18   92,852 instances of health insurance information; 115,747 instances of medical

19   information; 374 instances of financial account information; 10,723 social security

20   numbers; 217 driver's licenses or state IDs; 37 instances of credit or debit card

21   information; seven passwords, pins, or account logins; 7,739 Medicare or Medicaid IDs;

22   and two passport numbers. (Id. at 2–3.) In November 2019, Defendant allegedly sent

23   more than 100,000 breach notification letters to individuals whose PII or PHI was

24   included in the accessed email accounts. (Id. at 3.)

25          On November 29, 2019, Plaintiff Juan Maldonado filed a class action complaint

26   against Defendant. (Doc. No. 1.) Over the next two months, three related cases were filed

27   against Defendant. See Adam Bickford, Jeffrey Halbstein-Harris, and Alex Mercado, et.

28   Al. v. Solara Medical Supplies, LLC, No. 3:19-cv-02368-HJ-KSC; Wardrop v. Solara

Medical Supplies, LLC., No. 3:19-cv-0243-H-KSC; Keally v. Solara Medical Supplies, LLC, No. 3:20-cv-00049-K-KSC. On January 7 and 23, 2020, the parties filed motions to consolidate the related cases. (Doc. Nos. 9, 23.) On January 8 and 27, 2020, the Court granted the parties' motions to consolidate and designated the present action as the lead case. (Doc. Nos. 10, 25.) The Court also appointed William Federman and Stuart A. Davidson as interim Co-Lead Counsel, and James Robert Noblin, Kelly K. Iverson, and Corenelius P. Dukelow as interim Class Counsel.[1] (Doc. Nos. 9–10, 25.)

On January 23, 2020, Plaintiffs filed a first amended complaint. (Doc. No. 24.) On March 9, 2020, Defendant filed a motion to dismiss Plaintiffs' first amended complaint for failure to state a claim (Doc. No. 31.) On March 30, 2020, Plaintiffs filed a response to Defendant's motion to dismiss, and, on April 6, 2020, Defendant filed a reply. (Doc. Nos. 32, 34.) On May 7, 2020, the Court granted in part and denied in part Defendant's motion to dismiss and granted Plaintiffs thirty days to file an amended complaint. (Doc. No. 42.) On May 11, 2020, Plaintiffs filed a second amended complaint. (Doc. No. 43.) On May 26, 2020, Defendant filed an answer. (Doc. No. 44.) On July 20, 2020, the Honorable Karen S. Crawford presided over an Early Neutral Evaluation Conference, but the parties were unsuccessful in coming to a settlement agreement. (Doc. Nos. 45, 142-2 at 3.)

On July 2, 2021, Plaintiffs file a motion for class certification. (Doc. Nos. 95, 97–98.) On July 8, 2021, the parties represent they engaged in a full day of mediation before JAMS mediator Bruce Friedman but were unable to reach a settlement. (Doc. No. 142-2 at 4.) The parties represent they continued to work with Mr. Friedman over the following months. (Id.) On August 30, 2021, Defendant filed an opposition to Plaintiffs' motion for class certification and a Daubert motion to exclude Plaintiffs' damages expert. (Doc. Nos. 106, 110.) On September 13, 2021, Plaintiffs filed a reply in support of their motion for

---

[1]On January 8, 2020, the Court also appointed William M. Sweetman as interim Class Counsel. (Doc. No. 10.)  However, on October 13, 2020, the Court granted the parties' joint motion to withdraw William M. Sweetman as interim class counsel. (Doc. Nos. 60–61.)

1  class certification and a response in opposition to Defendant's <u>Daubert</u> motion. (Doc.

2  Nos. 117, 120–122.) On September 20, 2021, Defendant filed a reply in support of its

3  <u>Daubert</u> motion. (Doc. No. 127.) On October 12, 2021, the Court held a hearing on

4  Plaintiffs' motion for class certification and Defendant's <u>Daubert</u> motion. (Doc. No. 137.)

5  Shortly before the hearing, the parties notified the Court they had reached an agreement-

6  in-principle to settle. (Doc Nos. 137, 140, 142-2 at 4.) As such, the Court dismissed the

7  parties' motions as moot. (Doc. No. 137.) On January 25, 2022, Plaintiffs filed the

8  present motion requesting the Court grant preliminary approval of the proposed class

9  action settlement and direct notice to the settlement class. (Doc. No. 142.)

10  **II.    Proposed Settlement**

11      The Settlement Agreement defines the Settlement Class as:

12  All Persons in the United States and its Territories who were sent a letter from
13  Solara notifying them that their Protected Health Information and/or Personally
     Identifiable Information may have been compromised by the Security Breach that
14  occurred during the Class Period. The following are excluded from the Settlement
     Class: (1) Defendant, any parent, subsidiary, affiliate, or controlled Person by
15  Defendant, as well as the officers, directors agents, and servants of Defendant, and
     the immediate family members of such persons; (b) the presiding District Judge
16  and Magistrate Judge in the Action, and their staff, and their immediate family
     members; and (c) all those otherwise in the Settlement Class who timely and
17  properly exclude themselves from the Settlement Class as provided in this
18  Agreement.

19
20  (Doc. No. 142-2 at 11, ¶ 43.) The Class Period is April 2, 2019 through June 20, 2019.

21  (<u>Id.</u> at 6, ¶ 9.)

22      Under the Settlement Agreement, Defendant will pay the Settlement Amount of

23  $5,060,000. (<u>Id.</u> at 16, ¶ 1.) Defendant will also be required to perform specified remedial

24  measures for a minimum of the next two years and "perform either improved versions of

25  such recommendations or the new industry standard thereafter for at least three additional

26  years." (<u>Id.</u> at 16, ¶ 1; 23, ¶ 2.) The remedial measures require Defendant to: (1) undergo

27  an American Institute of Certified Public Accountants ("AICPA") System and

28  Organization Controls for Service Organizations 2 ("SOC 2") Type 2 audit in 2022 to be

1   repeated until Defendant passes; (2) engage an independent third party to perform a

2   HIPAA IT assessment starting in 2022; (3) undergo at least one cyber incident response

3   test per year starting in 2022; (4) require its staff to undergo periodic training in security

4   and privacy at least twice a year; (5) engage a company to test its phishing and external

5   facing vulnerabilities at least twice a year; and (6) deploy a third-party enterprise Security

6   Information Event and Management ("SIEM") tool with a 400-day look-back on logs.

7   (Id. at 21, ¶ 1.) Defendant's compliance officer will be responsible for ensuring

8   compliance with the remedial measures. (Id. at 23, ¶ 1(G).) Defendant continues to deny

9   any wrongdoing, and the Settlement Agreement does not constitute an admission or

10  finding of any fault, liability, wrongdoing, or damage by Defendant. (Id. at 28–29, ¶ 1.)

11  The Settlement Agreement dismisses with prejudice this action and releases Defendant

12  from any claims and causes of action that have or could have been brought against it in

13  this action. (Id. at 30–32,  ¶¶ 1–8.)

14      Each Settlement Class Member who files a timely claim will receive $100 in cash

15  payment distributed in the manner of their choice from the Net Settlement Fund. (Id. at

16  12, ¶¶ 1, 3.) If funds remain in the Settlement Fund following the first distribution,

17  Settlement Class Members will receive a pro rata supplemental distribution for a

18  maximum of $1,000 in total cash payments. (Id. at 13, ¶ 5.) If funds remain the in the

19  Settlement Fund after all Settlement Class Members receive the maximum of $1,000 in

20  cash payments, the remining funds will be donated to the Juvenile Diabetes Research

21  Foundation, an accredited 501(c)(3) non-profit agency working on treatments,

22  preventions, and cures for type 1 diabetes.  (Id. at 18, ¶ 2.)

23      Taxes and tax expenses, administration costs, any fees and expenses awarded to

24  Class Counsel, and any compensatory award to Lead Plaintiffs will be paid from the

25  Settlement Fund before any distributions to the Settlement Class Members are made. (Id.

26  at 8, ¶ 23; 17, ¶¶ 1–4.) Class Counsel intend to request an attorneys' fee award of

27  $2,300,000, or 45.45% of the monetary settlement amount, and reimbursements of up to

28

1  $350,000. (Doc. No. 142-1 at 6.) Plaintiffs have also indicated they may seek class

2  representatives' services awards of up to $4,000 for each of the Lead Plaintiffs. (Id.)

3        The parties have selected KCC Class Action Services LLC as the Settlement

4  Administrator. (Doc. No. 142-2 at 10, ¶ 41.) The Settlement Administrator will email or

5  mail the Short Notices to Settlement Class Members and post the Short and Long

6  Notices, Claim Form, and other documents and deadlines on a website created by the

7  Settlement Administrator. (Id. at 11–12,  ¶¶ 2, 4; see also Exs. A, B, D.) Each Settlement

8  Class Member is required to submit to the Settlement Administrator a Claims Form to

9  receive their payment. (Id. at 13–14, ¶¶ 2–4; Ex. A.) Settlement Class Members reserve

10  the right to object to or opt out of the settlement. (Id. 24–25, ¶¶ 1–5; 25–26 ¶¶ 1–7.)

### Discussion

12        When "the parties reach a settlement agreement prior to class certification, courts

13  must peruse the proposed compromise to ratify both the propriety of the certification and

14  the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

15  The district court must first "assess whether a class exists," and second, determine

16  whether the "proposed settlement is fundamentally fair, adequate, and reasonable." Id.

17  **I.**      **Class Certification**

18        Plaintiffs seek to certify a class pursuant to Federal Rule of Civil Procedure

19  23(b)(3) for purposes of settlement only. (Doc. No. 142-1 at 21–22.) The class includes

20  "[a]ll Persons in the United States and its Territories who were sent a letter from Solara

21  notifying them that their Protected Health Information and/or Personally Identifiable

22  Information may have been compromised by the Security Breach that occurred during the

23  Class Period." (Doc. No. 142-2 at 11, ¶ 43.) The Class Period is April 2, 2019 through

24  June 20, 2019. (Id. at 6, ¶ 9.)

25        A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the

26  requirements of Rule 23(a). Fed. R. Civ. P. 23(b); see Wal-Mart Stores, Inc. v. Dukes,

27  564 U.S. 338, 345 (2011). Once subsection (a) is satisfied, the purported class must the

28  fulfill the requirements of Rule 23(b)(3). Id.

3:19-cv-02284-H-KSC

1        **A.    Rule 23(a) Requirement**

2        Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class

3    members if all of the following requirements are met: (1) numerosity; (2) commonality;

4    (3) typicality; and (4) adequacy of representation. Fed. F. Civ. P. 23(a).

5        The numerosity prerequisite is met if "the class is so numerous that joinder of all

6    members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the

7    numerosity requirement satisfied when a class includes at least 40 members." Rannis v.

8    Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) (citing EEOC v. Kovacevich "5" Farms,

9    No. CV-F-06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007)). Plaintiffs

10   estimate the proposed Settlement Class consists of approximately 100,000 individuals

11   who were notified by Defendant that their PII or PHI may have been compromised. (Doc.

12   No. 142-1 at 18.) The numerosity prerequisite is met.

13       The commonality prerequisite is met if there are "questions of law or fact common

14   to the class." Fed. R. Civ. P. 23(a)(2). "[T]he key inquiry is not whether the plaintiffs

15   have raised common questions, 'even in droves,' but rather, whether class treatment will

16   'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S.

17   Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Dukes, 564 U.S. at 350).

18   Plaintiffs argue that common question of fact and law to the proposed Settlement Class

19   include whether Defendant's data security protocols were adequate; what steps Defendant

20   took to identify and respond to security threats; whether Defendant complied with

21   industry norms and applicable regulations, including HIPAA and the California Medical

22   Information Act ("CMIA"); and whether and when Defendant knew or should have

23   known about the Data Breach. (Doc. No. 142-1 at 18.) The commonality prerequisite is

24   also met.

25       Typicality requires that "the claims or defense of the representative parties [be]

26   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's

27   claims are "'typical' if they are reasonably co-extensive with those of absent class

28   members." Castillo v. Bank of America, NA, 980 F.3d 723, 729 (9th Cir. 2020) (quoting

3:19-cv-02284-H-KSC

1    Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)). Typicality requires that

2    a representative plaintiff "possess the same interest and suffer the same injury as the class

3    members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (citation omitted).

4    Here, Plaintiffs allege they and the proposed Settlement Class Members were injured by

5    Defendant's "singular pattern of misconduct" of their handling of PII and PHI and that

6    Plaintiffs' and the proposed Settlement Class Members' claims and legal theories arise

7    from this same factual situation. (Doc. No. 142-1 at 19.) Plaintiffs further allege that the

8    elements they and the proposed Settlement Class Members must prove for negligence,

9    breach of contract, unjust enrichment, California's Unfair Competition Law, the CMIA,

10   and California's Consumer Records Act are identical, and that there are no defenses that

11   are unique to Plaintiffs. (Id.) The typicality prerequisite is met.

12        The adequacy of representation prerequisite requires that the class representative

13   be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P.

14   23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any

15   conflicts of interest with any other class members and (2) will prosecute the action

16   vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. First, Plaintiffs' claims arise

17   out of the same underlying conduct by Defendant and are coextensive with those of the

18   proposed Settlement Class. (Doc. No. 142-1 at 20.) As such, there does not appear to be

19   any potential conflict of interest between the Lead Plaintiffs and the remaining class

20   members. Second, interim Class Counsel are experience in securities class actions and

21   have diligently prosecuted this case for two years. (Id. at 20–21.) The adequacy of

22   representation prerequisite is met and so the prerequisites of Rule 23(a) are satisfied.

23        **B.    Rule 23(b)(3)**

24        Rule 23(b)(3) requires a court to find that: (1) "the questions of law or fact

25   common to class members predominate over any questions affecting only individual

26   members" and (2) "that a class action is superior to other available methods for fairly and

27   efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These factors are

28   referred to as the "predominance" and "superiority" tests. Hanlon, 150 F.3d at 1022–23.

1   Rule 23(b)(3)'s requirements are designed "to cover cases 'in which a class action would

2   achieve economies of time, effort, and expenses, and promote…uniformity of decision as

3   to persons similarly situated, without sacrificing procedural fairness or bringing about

4   other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)

5   (citation omitted). If the parties seek to certify a class for settlement purposes, "a district

6   court need not inquire whether the case, if tried, would present intractable management

7   problems for the proposal is that there be no trial." Id. at 620 (citing Fed. R. Civ. P.

8   23(b)(3)(D)).

### 1. Predominance

10   The predominance inquiry tests whether the proposed class is "sufficiently

11   cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting

12   Amchem, 521 U.S. at 623). This analysis requires more than proof of common issues of

13   law and fact. Id. Rather, the common questions should "present a significant aspect of the

14   case and…be resolved for all members of the class in a single adjudication." Id.

15   (quotation omitted). Plaintiffs argue that all proposed Settlement Class Members' claims

16   depend on whether Defendant used reasonable security to protect their PII and PHI and

17   that this question can be resolved using the same evidence for all Settlement Class

18   Members' claims. (Doc. No. 142-1 at 21–22) As such, common questions of law and fact

19   predominate.

### 2. Superiority

21   The superiority inquiry requires determination of "whether objectives of the

22   particular class action procedure will be achieved in the particular case." Hanlon, 150

23   F.3d at 1023 (citation omitted.) The class action method is considered to be superior if

24   "classwide litigation of common issues will reduce litigation costs and promote greater

25   efficiency." Valentino v. Carter-Wallce, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation

26   omitted). The class action method has become a common method of adjudicating claims

27   arising out of data breaches. See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach

28   Litig., No. 16-MD-02752-LHK, 2020 WL 4212811, *8 (N.D. Cal. July 22, 2020)

1   ("Class-wide settlements have been approved in other data-breach cases.). Plaintiffs note

2   the proposed Settlement Class consists of approximately 100,000 individuals and that

3   resolving these disputes in a single class action rather than through tens of thousands of

4   individual suits would be far more efficient. (Doc. No. 142-1 at 22.) Plaintiffs also argue

5   a single class action is the superior method of adjudicating these suits because the amount

6   in dispute for each individual Settlement Class Member is too small and cost of litigation

7   too great for individuals to pursue claims on their own. (Doc. No. 142-1 at 22.) A class

8   action is a superior method of adjudicating this matter.

9        The requirements of Rule 23(b)(3) are satisfied. As a result, the Court grants

10  preliminary certification of the proposed class. The Court may review this finding at the

11  final approval hearing.

12       **C.      Appointment of Class Counsel and Class Representatives**

13       Under Rule 23(g), a court that certifies a class must appoint class counsel. Fed. R.

14  Civ. P. 23(g)(1). A court must consider the following factors when appointing class

15  counsel: "(i) the work counsel has done in identifying or investigating potential clams in

16  the action; (ii) counsel's experience in handling class actions, other complex litigation,

17  and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable

18  law; and (iv) the resources that counsel will commit to represent the class." Fed. R. Civ.

19  P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's

20  ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P.

21  23(g)(1)(B).

22       The Court appointed William Federman and Stuart A. Davidson as interim Co-

23  Lead counsel and James Robert Noblin, Kelly K. Iverson, and Corenelius P. Dukelow as

24  interim Class Counsel. (Doc. Nos. 10, 25.) Since then, interim Co-Lead Counsel and

25  Class Counsel have obtained a good understanding of the issues and have prosecuted this

26  action through dispositive motions, discovery, mediation, and settlement negotiations.

27  (Doc. No. 142-2 at 12.). Interim Co-Lead also have significant prior experience in

28  litigating data breach class actions. (Id. at 12–14; Doc. Nos. 10 at 2, 25 at 2.) As a result,

1    the Court appoints Stuard A. Davidson of Robbins Geller Rudman & Dowd LLP and

2    William B. Federman of Federman & Sherwood as Co-Lead Class Counsel; and Stuart A.

3    Davidson of Robbins Geller Rudman & Dowd LLP, William B. Federman of Federman

4    & Sherwood, Kelly V. Iverson of Lynch Carpenter LLP, Robert Green of Green &

5    Noblin P.C., and Cornelius P. Dukelow of Abington Cole + Ellery as Class Counsel

6    pursuant to Federal Rule of Civil Procedures 23(g). (Doc. No. 142-2 at 6, ¶¶ 8, 12.)

7           Lead Plaintiffs meets the commonality, typicality, and adequacy requirements of

8    Rule 23(a). See In re Bridgepoint Educ. Inc. Secs. Litig., No. 12-cv-1737-JM-JLB, 2015

9    WL 224631, *8 (S.D. Cal. Jan. 15, 2015) (noting the inquiry as to whether a plaintiff

10   should be appointed as class representative is governed by Rule 23.) As such, Lead

11   Plaintiffs are also appointed as class representatives.

12   **II.     The Settlement**

13          Rule 23(e) requires the Court to determine whether a proposed settlement is

14   "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (citation

15   omitted). To make this determination, the Court must consider a number of factors,

16   including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely

17   duration of further litigation; (3) the risk of maintaining class action status throughout the

18   trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the

19   stage of proceedings; (6) the experience and views of counsel; (7) the presence of a

20   governmental participant; and (8) the reaction of class members to the proposed

21   settlement. Id.

22          "In addition, the settlement may not be the product of collusion among the

23   negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000)

24   (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "Prior to

25   formal class certification, there is an even greater potential for a breach of fiduciary duty

26   owed the class during settlement. Accordingly, such agreements must withstand an even

27   higher level of scrutiny of collusion or other conflicts of interest than is ordinarily

28   required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth

1    Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). "Signs

2    of collusion include: (1) a disproportionate distribution of the settlement fund to counsel;

3    (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not

4    awarded to revert to defendant rather than to be added to the settlement fund." Hefler v.

5    Wells Fargo & Co., 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018) (quoting In re

6    Bluetooth, 654 F.3d at 947).

7         Given that some of these factors cannot be fully assessed until a court conducts the

8    final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v.

9    GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the

10   preliminary approval stage, a court need only review the parties' proposed settlement to

11   determine whether it is within the permissible "range of possible judicial approval" and

12   thus, whether the notice to the class and the scheduling of a fairness hearing is

13   appropriate. Id. at 666. (citation omitted). Preliminary approval of a settlement and notice

14   to the class is appropriate if "(1) the proposed settlement appears to be the product of

15   serious, informed, and noncollusive negotiations, (2) has no obvious deficiencies, (3)

16   does not improperly grant preferential treatment to class representatives or segments of

17   the class, and (4) falls within the range of possible approval." In re Tableware Antitrust

18   Litig., 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007); see also Beaver v. Tarsadia

19   Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 2268853, *2–3 (S.D. Cal. May 24, 2007).

20        In determining whether a proposed settlement should be approved, the Ninth

21   Circuit has a "strong judicial policy that favors settlements, particularly where complex

22   class action litigation is concerned." Seattle, 955 F.2d at 1276. Additionally, the Ninth

23   Circuit favors deference to the "private consensual decision [settling] parties,"

24   particularly where the parties are represented by experienced counsel and negotiation has

25   been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948,

26   965 (9th Cir. 2009).

27        After reviewing the proposed Settlement Agreement in light of the above factors

28   and the current stage of the litigation, the Court concludes that preliminary approval is

3:19-cv-02284-H-KSC

1    appropriate. The proposed Settlement Agreement appears to be the result of serious,

2    informed, and non-collusive negotiations. See In re Tableware Antitrust Litig., 484 F.

3    Supp. 2d at 1079–80. Prior to reaching the Settlement Agreement, the parties engaged in

4    two years of litigation. (Doc. No. 1.) During this time, the parties fully briefed

5    Defendant's motion to dismiss, engaged in approximately fifteen months of discovery,

6    and fully briefed Plaintiffs' motion for class certification and Defendant's motion to

7    exclude Plaintiffs' damages expert. (Doc. No. 142-1 at 12.) As part of discovery in this

8    matter, Plaintiffs represent they served dozens of discovery requests on Defendant and

9    third-party subpoenas on others, reviewed nearly 500,000 pages of documents from

10   Defendant and third parties, took or defended 13 depositions, served six expert reports,

11   and fully briefed third-party discovery disputes in the District of Massachusetts. (Id.) On

12   July 20, 2020, the parties participated in an Early Neutral Evaluation Conference before

13   the Honorable Karen S. Crawford. (Doc. No. 53; Doc. No. 142-1 at 4.) On July 8, 2021,

14   Plaintiffs represent the parties engaged in a full day of mediation before JAMS mediator

15   Bruce Friedman. (Id. at 4.) The parties continued to work with Mr. Friedman before

16   reaching an agreement-in-principle to settle the action shortly before the hearing on

17   Plaintiffs' motion to class certification and Defendant's Daubert motion was schedule to

18   begin before this Court. (Id. at 4.) Considering this history, the record indicates the

19   parties "carefully investigated the claims before reaching a resolution." Ontiveros v.

20   Zamora, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted).

21        The proposed Settlement Agreement also does not appear to have any obvious

22   deficiencies, does not improperly grant preferential treatment to class representatives or

23   segments of the class, and falls within the range of possible approval. See In re

24   Tableware Antitrust Litig., 484 F. Supp. 2d at 1079–80. Class Counsel represents that

25   while they believe in the strength of Plaintiffs' claims, they recognize that Defendant

26   made non-frivolous arguments in its opposition to Plaintiffs' motion for class

27   certification regarding Plaintiffs' ability to prove damages. (Doc. No. 142-1 at 11, 14; see

28   Doc. No. 106.) Class Counsel represent that continuing to litigate the case would pose

1    significant risks for the class, including uncertain results at summary judgment or trial,

2    and the risk that Defendant may file for bankruptcy in the event of a high statutory

3    damages judgment against it. (Doc. No. 142-1 at 11 n.6.) Class Counsel further represent

4    that the settlement offers meaningful relief. (Id.)

5         The proposed Settlement Agreement provides for a settlement fund of $5,060,000.

6    (Id. at 10.) Under the proposed Settlement Agreement, all Settlement Class Members

7    who file a Claim Form will be entitled to $100 in cash payments with no need to

8    demonstrate any actual loss, out-of-pocket expenses, or identity theft or fraud. (Id. at 6–

9    7.) If funds remains in the Settlement Fund, residual funds will be distributed on a pro

10   rata basis for Settlement Class Members who timely filed a Claim Form for a maximum

11   of $1,000 total in cash payments. (Id.) Plaintiffs represent that the CMIA, Cal. Civ. Code

12   56.10, et seq., Plaintiffs would be able to recover $1,000 in nominal damages if Plaintiffs

13   were able to succeed at trial. (Id. at 10.) Plaintiffs note that Defendant has made strong

14   arguments that the Settlement Class would have difficultly proving actual damages, and

15   the CMIA claim is the only claim brought by Plaintiffs that does not require proof of

16   actual damages. (Id. at 11.) As such, Plaintiffs argue the $100 guaranteed cash payment

17   and up to $1000 possible cash payment would provide each Settlement Class Member

18   with at minimum 10% and at maximum the full amount they would have been entitled to

19   under the CMIA. (Doc. No. 142-1 at 10.) This falls within the range of possible approval.

20   See  Loeza v. JPMorgan Chase Bank, NA, No. 13-cv-0095-L-BGS, 2015 WL 13357592,

21   *8 (S.D. Cal. Aug. 8, 2015) (citing In re Tableware, 484 F. Supp. 2d at 1080) ("In

22   determining whether a settlement agreement is substantively fair to the class, a court must

23   balance the value of plaintiffs' expected recovery against the value of the settlement

24   offer."); In re Zynga Inc. Sec. Litig., No. 12-cv-04007-JSC, 2015 WL 6471171, *10

25   (N.D. Cal. Oct. 27, 2015) (citation omitted) ("A cash settlement amounting to only a

26   fraction of the potential recovery does not per se render the settlement inadequate or

27   unfair.").

28        The Class Counsel intend to seek an attorneys' fee award of $2,300,000 to be paid

1  from the Settlement Amount and reimbursement of expenses or charges resulting from

2  prosecuting the action up to $350,000 plus interest. (Doc. No. 142-1 at 6.) Class

3  Counsel's proposed request for attorneys' fees is approximately 45.45% of the total

4  monetary settlement value. Plaintiffs' argue this amount "equates to a negative multiplier

5  to Class Counsel's current lodestar of over $2,800,000" and takes into account the

6  injunctive relief provided by the proposed settlement on top of the monetary relief. (Id.)

7  Under the percentage-of-recovery method of calculating attorneys' fees, 25% of the

8  common fund is considered the "'benchmark' for a reasonable fee award" in class action

9  settlements.  In re Bluetooth, 654 F.3d at 942–43; see also Vasquez v. Coast Valley

10  Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. Mar. 6, 2010) ("The typical range of

11  acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% the total settlement

12  value, with 25% considered the benchmark."). The Court is concerned with the proposed

13  percentage of the Settlement Fund allocated to attorneys' fee. The Court will need further

14  information at the final approval hearing to justify the attorneys' fees requested. The

15  parties may need to revise the requested amount to a different figure more in line with the

16  typical range of acceptable attorneys' fees in this Circuit.

17        Finally, the proposed incentive award of $4,000 for the Lead Plaintiffs appears

18  reasonable given their efforts in this litigation. (Doc. No. 142-1 at 6.); see In re Mego,

19  213 F.3d at 463 (affirming incentive award of $5,000 to two plaintiff representatives of

20  5,400 potential class members in $1.75 million settlement, where incentive payment

21  constituted only 0.57% of the settlement fund.)

22        For the foregoing reasons, the Court conditionally grants preliminary approval of

23  the proposed settlement. The Court reserves judgment on the reasonableness of the

24  attorneys' fees for the final approval hearing.

25  **III.    Approving Class Notice**

26        Class notice must be "reasonably calculated, under all the circumstances, to apprise

27  interested parties of the pendency of the action and afford them an opportunity to present

28  their objections." Roes, 1–2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1045 (9th Cir. 2019)

1    (quoting <u>Eisen v. Carlisle and Jacquelin</u>, 417 U.S. 156, 174 (1974)). In addition, the class

2    notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the

3    notice must clearly and concisely state in plain, easily understood language:

> [t]he nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

8    Fed. R. Civ. P. 23(c)(2)(B).

9    **A.    Content of Notice**

10   The content of the proposed Short and Long Notices meets the requirements of

11   Rule 23(c)(3). (<u>See</u> Doc. No. 142-2, Exs. B, D.) In clearly understandable language, the

12   notices provide the following: a description of the lawsuit; a description of the settlement

13   class; an explanation of the material elements of the settlement; a statement declaring that

14   class members may exclude themselves from or object to the settlement; a description

15   that explains how class members may exclude themselves from or object to the terms of

16   the settlement; and a description of the fairness hearing. (Doc No. 142-1 at 15–16; Doc.

17   No. 142-2, Exs. B D.)

18   **B.    Method of Notice**

19   Here, the proposed method of notice is also reasonable. Plaintiffs propose KCC

20   Class Action Services LLC serve as the Settlement Administrator, noting KCC Class

21   Action Services LLC's experience with class actions. (Doc. No. 142-2 at 10, ¶ 41; Peak

22   Decl.) The Court approves the appointment of KCC Class Action Services LLC as the

23   Settlement Administrator. Under the proposed Settlement Agreement, Defendant will

24   provide the Settlement Administrator with the list of names, email addresses, and

25   physical addresses of all Settlement Class Members identified through Defendant's

26   records. (Doc. No. 142-1 at 15; Doc. No. 142-2, Peak Decl. ¶ 11.) Plaintiffs represent

27   that this method will identify nearly 100% of the Settlement Class and notice will reach

28   over 90% of the Settlement Class after taking into account email bounce backs and

3:19-cv-02284-H-KSC

1  undelivered mail. (Id.; Peak Decl. ¶ 19.) Within 21 days after the Court enters the

2  preliminary approval order, the Settlement Administrator will print and email or mail the

3  Short Notices directly to the Settlement Class Members. (Doc. No. 142-2 at 11, ¶¶ 2, 3,

4  Ex. D; Peak Decl. ¶¶ 12–15.) The Settlement Administrator will also establish a

5  settlement website, a post-office box for the receipt of any Settlement-related

6  correspondence, and a toll-free telephone number that will provide automated Settlement-

7  related information to Settlement Class Members. (Id. at 11, ¶ 2; Peak Decl. ¶¶ 16–18.)

8  The Settlement Administrator will respond to inquiries or requests from Settlement Class

9  Members. (Id.) The Settlement Administrator will post the Long Notice, Short Notice,

10  Claim Form, and other relevant documents and deadlines on the settlement website. (Id.

11  at 11–12, ¶ 4.) Within 10 days after the Court enters the preliminary approval order, the

12  Settlement Administrator will also post the Short Notice on its website for 120

13  consecutive days in a prominent location with a URL hyperlink to the settlement website.

14  (Id. at 12, ¶ 5.) Settlement Class Members will also be able to submit Claim Forms

15  through the settlement website. (Id.)

16        After reviewing the content and the proposed method of providing notice, the

17  Court determines that the notice is adequate and sufficient to inform the class members of

18  their rights. Accordingly, the Court approves the Short Notice, Long Notice, and Claim

19  Form as well as the manner of giving notice of the proposed Agreement.

20  **IV.    Scheduling Fairness Hearing**

21        The Court schedules the final approval hearing for **Monday, September 12, 2022**,

22  at **10:30 a.m.** The Settlement Administrator must send the Class Notices to the

23  Settlement as set forth in the Agreement by **May 9, 2022**. Plaintiffs and Class Counsel

24  must file all papers in support of final approval, the plan of allocation, and any fee and

25  expense application or compensatory award by **August 1, 2022**. Potential Class Members

26  must return claims by **August 8, 2022**. Potential Class Members must return requests for

27  exclusion and objections by **August 22, 2022**. Any reply papers must be filed by **August**

28  **29, 2022**. Plaintiffs and Class Counsel must also file with the Court details outlining the

3:19-cv-02284-H-KSC

1    scope, method, and results of the Notice Plan and a list of Potential Class Members who

2    have timely and validly excluded themselves from the Settlement by **August 29, 2022**.

3                                       <u>**Conclusion**</u>

4          The Court certifies the class for purposes of settlement, preliminarily approves of

5    the proposed settlement, appoints Class Counsel and Class Representatives, and approves

6    the form and manner of the notice of the proposed Settlement Agreement to the

7    Settlement Class Members. The Court also appoints KCC Class Action Services LLC as

8    the Settlement Administrator. Additionally, the Court sets the final approval hearing for

9    **Monday, September 12, 2022** at **10:30 a.m.** Plaintiff must file a motion for final

10   approval of the settlement, and any motions for fee awards and incentive awards on or

11   before **August 1, 2022**.

12         **IT IS SO ORDERED.**

13   DATED: April 20, 2022

14                                    _____
                                      MARILYN L. HUFF, District Judge
15                                    UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28

3:19-cv-02284-H-KSC