UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re SOLARA MEDICAL SUPPLIES DATA BREACH LITIGATION** | Case No.: 3:19-cv-02284-H-KSC<br><br>**ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; and**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>[Doc. Nos. 147, 148.] |

On August 1, 2022, Plaintiffs Juan Maldonado, Adam William Bickford, Jeffrey Harris, Alex Mercado, Thomas Wardrop, and Kristi Keally, as legal guardian of a minor child whose initials are M.K. (collectively, "Plaintiffs") filed (1) an unopposed motion for final approval of the class action settlement; and (2) a motion for attorneys' fees, expenses, and service awards. (Doc. Nos. 147, 148.) On August 29, 2022, Plaintiffs filed a reply brief. (Doc. No. 149.) On September 12, 2022, the Court held a hearing on the matter. Amanda Brooke Murphy, Stuart A. Davidson, Bradley M. Beall, and Kelly Kathleen Iverson appeared on behalf of Plaintiffs. Heidi S. Inman appeared on behalf of Defendant Solara ("Defendant"). For the reasons discussed below, the Court grants Plaintiffs' motion for final approval of the class action settlement and Plaintiffs' motion for attorneys' fees, expenses, and service awards.

## Background

### I. Factual and Procedural Background

Defendant is a direct-to-consumer supplier of medical devices related to the care of diabetes and a registered pharmacy in the state of California. (Doc. No. 43 ¶1.) Plaintiffs are six individuals who allege that their personal and medical information was exposed after Defendant's computer systems were compromised by hackers. (Doc. No. 142-1 at 2.) Plaintiffs allege that between April 2, 2019 and June 20, 2019, hackers were able to gain access to Defendant's computer systems, which contained personal identifying information ("PII") and protected health information ("PHI") of tens of thousands of individuals (the "Data Breach"). (Id. at 2-3.) In November 2019, Defendant sent more than 100,000 breach notification letters to individuals whose PII or PHI was included in the accessed email accounts. (Id. at 3.)

On November 29, 2019, Plaintiff Juan Maldonado filed a class action complaint against Defendant. (Doc. No. 1.) Over the next two months, three related cases were filed against Defendant. See Adam Bickford, Jeffrey Halbstein-Harris, and Alex Mercado, et. Al. v. Solara Medical Supplies, LLC, No. 3:19-cv-02368-H-KSC; Wardrop v. Solara Medical Supplies, LLC., No. 3:19-cv-02423-H-KSC; Keally v. Solara Medical Supplies,

1  LLC, No. 3:20-cv-00049-H-KSC. On January 8 and 27, 2020, the Court consolidated the
2  related cases. (Doc. Nos. 10, 25.)
3        On January 23, 2020, Plaintiffs filed a consolidated class action complaint. (Doc.
4  No. 24.) On March 9, 2020, Defendant filed a motion to dismiss Plaintiffs' first amended
5  complaint for failure to state a claim (Doc. No. 31.) On May 7, 2020, the Court granted in
6  part and denied in part Defendant's motion to dismiss and granted Plaintiffs thirty days to
7  file an amended complaint. (Doc. No. 42.) On May 11, 2020, Plaintiffs filed an amended
8  consolidated class action complaint. (Doc. No. 43.) On May 26, 2020, Defendant filed an
9  answer. (Doc. No. 44.) On July 20, 2020, the Magistrate Judge presided over an Early
10 Neutral Evaluation Conference, but the parties were unsuccessful in coming to a
11 settlement agreement. (Doc. No. 142-2, Davidson Decl. Ex. 1 at 3 ("Stipulation."))
12       On July 2, 2021, Plaintiffs filed a motion for class certification. (Doc. Nos. 95, 97–
13 98.) The parties represent that on July 8, 2021, they engaged in a full day of mediation
14 before a private mediator but were unable to reach a settlement. (Doc. No. 142-2,
15 Stipulation at 4.) The parties further represent they continued to work with the mediator
16 over the following months. (Id.) On August 30, 2021, Defendant filed an opposition to
17 Plaintiffs' motion for class certification and a Daubert motion to exclude Plaintiffs'
18 damages expert. (Doc. Nos. 106, 110.) The parties fully briefed Plaintiffs' motion for
19 class certification and Defendant's Daubert motion. (Doc. Nos. 117, 120–122, 127.) On
20 October 21, 2021, the parties notified the Court they had reached an agreement-in-
21 principle to settle the case. (Doc. Nos. 137, 140; Doc. No. 142-2, Stipulation at 4.) As
22 such, the Court denied the parties' motions as moot. (Doc. No. 137.)
23       On January 25, 2022, Plaintiffs filed a motion requesting the Court grant
24 preliminary approval of the proposed class action settlement and direct notice to the
25 settlement class. (Doc. No. 142.) On April 18, 2022, the Court held a hearing on
26 Plaintiffs' motion. (Doc. No. 145.) On April 20, 2022, the Court issued an order: (1)
27 certifying the class for settlement purposes; (2) preliminarily approving class settlement;
28 (3) appointing class representatives and counsel; (4) approving class notice; and (5)

scheduling a final approval hearing. (Doc. No. 146.) On August 1, 2022, Plaintiffs filed the present motions for final approval of the class action settlement and for attorneys' fees, expenses, and service awards. (Doc. Nos. 147, 148.)

## II.     Class Settlement Details

The settlement agreement defines the settlement class as "all Persons in the United States and its Territories who were sent a letter from Solara notifying them that their Protected Health Information and/or Personally Identifiable Information may have been compromised by the Security Breach that occurred during the Class Period." (Doc. No. 142-2, Stipulation at 10.) The settlement class consists of approximately 114,000 individuals. (Doc. No. 147-1 at 7.) The settlement class period is April 2, 2019 through June 20, 2019. (Doc. No. 142-2, Stipulation at 6.) Excluded from the settlement class are:

> (a) Defendant, any parent, subsidiary, affiliate, or controlled Person by Defendant, as well as the officers, directors, agents, and servants of Defendant, and the immediate family members of such persons; (b) the presiding District Judge and Magistrate Judge in the Action, and their staff, and their immediate family members; and (c) all those otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class as provided in this Agreement.

(Id. at 10.)

Under the settlement agreement, Defendant and its insurer will pay the settlement amount of $5,060,000 into a non-reversionary settlement fund. (Doc. No. 147-1 at 7.) The settlement agreement also requires Defendant to perform specified remedial measures for at least five years. (Id. at 8-9.) The remedial measures require Defendant to: (1) undergo an American Institute of Certified Public Accountants ("AICPA") System and Organization Controls for Service Organizations 2 ("SOC 2") Type 2 audit to be repeated until Defendant passes; (2) engage an independent third party to perform a HIPAA IT assessment annually; (3) undergo at least one cyber incident response test per year; (4) require its staff to undergo periodic training in security and privacy at least twice a year; (5) engage a third-party company to test its phishing and external facing vulnerabilities at least twice a year; and (6) deploy a third-party enterprise Security

Information Event and Management ("SIEM") tool with a 400-day look-back on logs. (Id.) Defendant's compliance officer will be responsible for ensuring compliance with the remedial measures. (Id. at 9.)

When the Court preliminarily approved the settlement agreement and settlement class, the Court also directed Plaintiff to issue notice in accordance with the proposed notice plan. (Doc. No. 146 at 15–17.) Under the Court-approved schedule, potential settlement class members were required to return their claims by August 8, 2022. (Id. at 17.) Potential settlement class members were required to return their requests for exclusion or objections by August 22, 2022. (Id.) Plaintiffs represent that the settlement administrator, KCC Class Action Services LLC, received 4,852 claims and three requests for exclusion by the specified deadlines. (Doc. No. 149 at i-ii; Doc. No. 149-4, Supp. Decl. Smith ¶ 3.) One individual objected to the settlement agreement on August 6, 2022. (Doc. No. 149 at i n.1; Doc. No. 149-3, Supp. Decl. Davidson, Ex. A.)

Taxes, administration costs, any fees and expenses awarded to Class Counsel, and service awards to Lead Plaintiffs will be paid from the settlement fund before any distributions to the settlement class members are made. (Doc. No. 142-2 Ex. B at 3.) Class Counsel are requesting attorneys' fees of $2,300,000. (Doc. No. 148-1 at 1–2.) Class Counsel are also requesting reimbursements of expenses of $278,021.35. (Id. at 22.) Plaintiffs also seek service awards of $4,000 for each Class Representative. (Id. at 2.)

Under the terms of the settlement agreement, each settlement class member who filed a timely claim will receive $100 in cash payment distributed in the manner of their choice from the net settlement fund if the settlement is approved. (Doc. No. 142-2 Ex. 2 at 3.) If funds remain in the settlement fund following the first distribution, settlement class members will receive a pro rata supplemental distribution for a maximum of $1,000 in total cash payments. (Id. at 3.) Any remaining funds would be donated to the Juvenile Diabetes Research Foundation, an accredited 501(c)(3) non-profit agency working on treatments, preventions, and cures for type 1 diabetes. (Id. at 4.) Based on the number of claims returned by the August 8, 2022 deadline, Plaintiffs represent that settlement class

members who timely returned their claims will receive approximately $489.65 in cash if the Court were to grant final approval of the settlement and award the attorneys' fees, expenses, and service awards requested. (Doc. No. 149 at iii; Doc. No. 149-4, Supp. Smith Decl. ¶ 7.)

**Discussion**

**I.     Motion for Final Approval**

   **A. Class Certification**

A class may be certified under Federal Rule of Civil Procedure 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) further requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Order certifying the class for settlement purposes, the Court preliminarily determined the proposed settlement class met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. No. 146 at 6–10.) In this order, the Court concludes that the settlement class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The settlement class contains the approximately 114,000 individuals who were notified by letter by Defendant that their PII or PHI may have been compromised. (Doc. No. 147-1 at 7.) As such, the class is sufficiently numerous. See Rannis v. Recchia, 380 F.App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

Questions common to the settlement class include whether Defendant's data security protocols were adequate; what steps Defendant took to identify and respond to security threats; whether Defendant complied with industry norms and applicable

regulations, including HIPAA and the California Medical Information Act ("CMIA"); and whether and when Defendant knew or should have known about the Data Breach. (Doc. No. 146 at 7; Doc. No. 142-1 at 18.) As a result, individual issues do not preclude a finding of commonality.

Typicality is also satisfied because both Plaintiffs and the settlement class were injured by Defendant's mishandling of their PII and PHI and the claims of both Plaintiffs' and the settlement class arise out of the same factual situation, the Data Breach. (Doc. No. 142-1 at 19.) Plaintiffs further allege that the elements they and the proposed class members must prove for each claim are identical and that there are no defenses that are unique to Plaintiff. (Id.); see Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.").

Finally, the adequacy requirement is satisfied because Lead Plaintiffs have vigorously prosecuted the interests of the proposed settlement class and Lead Counsel have extensive experience in class actions and complex litigation. (Doc. No. 142-1 at 20; Doc. No. 147-1 at 18–19); see Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

The proposed settlement class also meets the predominance and superiority requirements of Rule 23(b)(3). A single adjudication will resolve the central issue of the case – whether Defendant used reasonable security to protect their PII and PHI – and that question can be resolved with the same evidence for all of Plaintiffs' and the class members' claims. (Doc. No. 142-1 at 21–22.) Thus, the proposed class is "sufficiently cohesive to warrant adjudication by representation," and so the predominance requirement is met. See Hanlon, 150 F.3d at 1022 (citation omitted). A class action is also the superior method for resolving this dispute. Because the proposed settlement class

consists of thousands of individuals, it would "reduce litigation costs and promote greater efficiency" to adjudicate this action in a single class action. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). The class action method has become a common method of adjudicating claims arising out of data breaches. In re Yahoo! Inc. Customer Data Sec. Breach Litig., No. 16-MD-02752-LHK, 2020 WL 4212811, *43 (N.D. Cal. July 22, 2020). Accordingly, the Court certifies the settlement class.

### B. Fairness and Adequacy of the Proposed Settlement

A proposed class settlement can only be approved if "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, district courts in the Ninth Circuit consider several factors, including "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1026). A proposed settlement must additionally meet the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(A)–(D).

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties."). Nevertheless, when "class counsel negotiates a settlement agreement before the class is even certified," settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citations omitted). As such, courts must also scrutinize proposed settlements

for "evidence of collusion or other conflicts of interest." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

### 1. The Strength of Plaintiffs' Case, the Risk of Further Litigation, and the Settlement Amount

Plaintiffs and Class Counsel continue to assert that their claims against Defendant have merit, but also acknowledge the risk in continuing litigation and that there is not a guarantee that this case would survive a contested class certification or, if it was certified, a challenge to de-certify it. (Doc. No. 147-1 at 15.) Plaintiffs recognize that Defendant made strong arguments in its opposition to class certification, including the argument that Plaintiffs would be unable to prove that any of Plaintiffs' or the settlement class members' PII or PHI was actually accessed or viewed by cyber-criminals. (Id.) Plaintiffs also note that litigation through trial and appeal would be lengthy, complex, and impose significant cost to the parties. (Id. at 16.) Finally, Defendant also stated several times that Defendant may file for bankruptcy protection in the event of a high statutory damages judgment against it after trial. (Id. at 15 n.7.)

Under the proposed settlement, Defendant will pay the settlement amount of $5,060,000 without any possibility of reversion. (Doc. No. 142-2, Stipulation at 16.) Defendant is also required to implement specified remedial measures for a minimum of five years. (Id. at 16, 21, 23.) Payments to settlement class members will be made from the settlement fund after any taxes, administrative costs, attorneys' fees, expenses, and service awards for the Lead Plaintiffs. (Doc. No. 142-2 Ex. B at 3.) As of August 29, 2022, 4,852 claims have been submitted. (Doc. No. 149 at ii; Doc. No. 149-4, Supp. Decl. Smith ¶ 3, Ex. B.) If Plaintiffs' requested attorneys' fees, expenses, and service awards are approved, each settlement class member who returned a claim will receive approximately $489.65 in cash from the settlement. (Doc. No. 149 at ii–iii; Doc. No. 149-4, Supp. Decl. Smith ¶ 7, Ex. B.) Notably, settlement class members do not need to prove damages as a prerequisite to obtain compensation. (Doc. No. 147-1 at 7–8.) Plaintiffs also note that the injunctive relief provides additional benefits to settlement class members,

many of whom are required by their insurance to continue to use Defendant's services for their diabetes management products. (Id. at 9.)

Balancing "the continuing risk of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery," the Court concludes that these factors favor approval of the proposed settlement. See Franklin v. Wells Fargo Bank, N.A., No. 14-cv-2349-MMA, 2016 WL 402249, at *3 (S.D. Cal. Jan. 29, 2016) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000)).

### 2. The Extent of Discovery Completed, the Stage of Proceedings, and Absence of Collusion

Prior to reaching the proposed settlement agreement, the parties engaged in significant discovery and substantive briefing over the course of approximately two years of litigation. (Doc. No. 147-1 at 18.) The parties fully briefed Defendant's motion to dismiss, Defendant's Daubert motion to exclude Plaintiffs' damages expert, and Plaintiffs' motion for class certification. (Doc. Nos. 31, 32, 34, 42, 95, 106, 110, 117, 120, 127.) Plaintiffs represent they also "served dozens of discovery requests on [Defendant] and third-party subpoenas on others; fully briefed third-party discovery disputes in the District of Massachusetts; reviewed, analyzed, and coded nearly 500,000 pages of documents from [Defendant] and third parties; taken or defended thirteen depositions; [and] served six expert reports." (Doc. No. 147-1 at 18.) Plaintiffs represent the parties began settlement negotiations in July 2021 after extensive discovery had already taken place. (Id. at 21; Doc. No. 147-2, Decl. Davidson, ¶¶ 27–83.) The parties engaged with a private mediator, who assisted the parties in reaching an agreement-in-principle to settle on October 12, 2021. (Doc. No. 100.) The parties then worked to finalize the proposed settlement's terms over the next few months before Plaintiffs filed their motion for preliminary approval of the proposed settlement agreement on January 25, 2022. (Doc. No. 142.)

Based on the record, there is also no indication of collusion. See In re Bluetooth,

654 F.3d at 947 (recognizing signs of collusion include when counsel receive a disproportional distribution of the settlement, the class receives no money, and when settlement funds revert to defendants). The requested attorneys' fees are reasonable considering the record and extensive time spent by Class Counsel on this matter, and the results achieved. See infra Section II.A. Similarly, the requested service award for Lead Plaintiffs of $4,000 is also reasonable. Id.; see, e.g., In re Mego, 213 F.3d at 463 (affirming an incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in a $1,725,000 settlement). Settlement class members will receive meaningful monetary distributions even after awards and costs. (Doc. No. 149 at iii.) Further, none of the funds will revert to Defendant. (Doc. No. 147-1 at 1.) The proposed settlement agreement was also the product of significant arms-length negotiations with the assistance of a private mediator. (Doc. No. 142-2 at 4.)

Because the proposed settlement agreement appears to have occurred following significant discovery, as the result of arms-length negotiations, and because there is no indication of collusion from the record, it is presumed fair. See Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). As such, these factors also support approval of the proposed settlement.

### 3. The Experience and Views of Counsel

Lead Counsel are qualified counsel with experience in data breach class actions. (Doc. No. 147-1 at 19–20.) While Lead Counsel represent that they "believe the claims asserted in the litigation have merit," they also acknowledge "the substantial risks involved in continuing this litigation." (Id. at 15.) Lead Counsel believe that "the settlement provides a fair, adequate, and reasonable recovery for settlement class members." (Id. at 20.) As a result, this factor supports approval. See Couser, 125 Supp. 3d at 1044 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in the litigation." (citation omitted)).

### 4. The Reaction of Class Members to the Proposed Settlement

Settlement class members were required to return their claims by August 8, 2022 and their exclusion or objections by August 22, 2022. (Doc. No. 146 at 17-18.) As of August 29, 2022, 4,852 claims have been received. (Doc. No. 149 at ii.) Plaintiffs also represent that only three requests for exclusion have been received. (Id. at i.) Finally, Plaintiffs represent that only one individual returned a letter objecting to the settlement. (Id. at i n.1.) The single objection supports the conclusion that the settlement is fair and reasonable. See Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); see also In re Mego, 213 F.3d at 459 (that there was only one opt-out supported upholding district court's approval of settlement).

For the reasons above, the proposed settlement is fair, adequate, and reasonable. As such, the Court grants Plaintiffs' motion for final approval of the class action settlement. (Doc. No. 147-1.)

### C. Adequacy of Notice

The Notice Plan complies with Federal Rule of Civil Procedure 23(c)(2)(B) and was implemented in accordance with this Court's order. (Doc. No. 146 at 16–17.) The Short and Long Notices approved by the Court also meet the requirements of Rule 23(c)(3). (Doc. No. 142-2, Exs. B, D; Doc. No. 146 at 16.) Following the Court's order preliminarily approving the proposed settlement and Notice Plan, Defendant provided the settlement administrator with the list of names and contact information of settlement class members. (Doc. No. 147, Ex. 2, Smith Decl.) Plaintiffs represent that the settlement administrator then emailed notices to 26,896 settlement class members and mailed notices to 79,660 settlement class members whose email addresses were unknown. (Id.) Defendant posted the notice of settlement on its website. (Id.) The settlement

administrator also created and maintained a settlement website that hosted the Notice and other important documents and where settlement class members could submit claims. (Id.) The settlement administrator also established a toll-free telephone number where settlement class members could call for additional information. (Id.) As of August 29, 2022, the settlement administrator received 4,852 claims, three requests for exclusion, and one objection. (Doc. No. 149 at i-ii.)

## II. Attorneys' Fees, Costs, and Incentive Awards

Having granted final approval of the settlement, the Court next turns to Plaintiffs' motion for attorneys' fees, expenses, and service awards. (Doc. No. 148-1.) Plaintiff seeks $2,300,000 in attorneys' fees; $278,021.35 in reimbursement for costs; and $4,000 service awards for each Lead Plaintiff. (Id. at 21-22, 24.)

### A. Attorneys' Fees

Pursuant to Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941. After having reviewed the parties' briefings and the circumstances of this case, the Court concludes that the attorneys' fees sought by Plaintiffs' counsel are reasonable under the circumstances. Accordingly, the Court grants Plaintiffs' motion for attorneys' fees.

### B. Litigation Expenses

Plaintiffs also request $278,021.35 in litigation expenses. (Doc. No. 148-1; Exs. 3–10.) The reported litigation expenses were for filing, witness and other fees; transportation, hotels, and meals; telephone and facsimile; postage; messenger and overnight delivery; court hearing transcripts; photocopies; online legal and financial research; litigation fund contributions; and eDiscovery database hosting. (Id.) The requested amount is less than the up to $350,000 plus interest Class Counsel notified class members they intended to seek in the Notice. (Doc. No. 142-2, Ex. B at 6, Ex. D at

1.) After reviewing Class Counsels' declaration and the attached summary of the incurred litigation expenses, the Court concludes that the requested expenses are reasonable and grants Class Counsel's request for these costs. See Oniveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reasonable litigation expenses from the fund." (citation omitted)).

### C.  Service Awards and Cy Pres Award

Plaintiffs request $4,000 service awards for each of the eight Lead Plaintiffs. (Doc. No. 148 at 24–25.) Service awards in class action cases are discretionary "and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59. Plaintiffs represent that each Lead Plaintiff contributed dozens of hours toward this litigation, including monitoring the progress of litigation; reviewing drafts of important pleadings; attending the ENE Conference before the Magistrate Judge; searching for and producing important documents; reviewing and approving drafts of responses to Defendant's written discovery requests; preparing for and participating in depositions where they were questioned by counsel for Defendant; and responding to questions and tasks from Class Counsel. (Doc. No. 148, Davidson Decl. ¶¶ 99–101.) Considering this participation, as well as acceptable ranges of incentive awards in similar cases, see Fulford v. Logitech, Inc., No, 8-CV-2041, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases), the Court approves $4,000 service awards for each Lead Plaintiff.

Finally, the Court approves the parties' choice in cy pres recipients. Where a proposed settlement contains a charitable gift, known as a cy pres award, a court must "ensure that the settlement retains some connection to the plaintiff class and the underlying claims." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). In this instance, the settlement agreement provides that any remaining money in the net

settlement fund will be "donated to the Juvenile Diabetes Research Foundation, a non-profit charitable organization working to find better treatments, preventions, and ultimately a cure for type 1 diabetes." (Doc. No. 142-2 Ex. 2 at 4.)[1] Defendant is the largest direct-to-consumer supplier of advanced diabetic devices for patients with diabetes. (Doc. Nos. 1, 43.) Many Plaintiffs are required by their insurance to use Defendant's services for their diabetes management. (Doc. No. 147-1 at 9.) The Juvenile Diabetes Research Foundation's mission and work have a strong nexus to the underlying lawsuit, laws, and class member interests. Accordingly, the Juvenile Diabetes Research Foundation is an appropriate organization to receive cy pres distributions in the settlement of this action.

///
///
///

---

[1] The Court notes that under the current distribution plan for the settlement award, there will not be any funds given as part of the cy pres award. (Doc. No. 149 at iii; Doc. No. 149-4, Supp. Smith Decl. ¶ 7.)

**Conclusion**

The Court has jurisdiction over the subject matter of this action and all parties to the action, including settlement class members. First, the Court certifies the settlement class and grants final approval of the settlement. (Doc. No. 147-1.) All persons who satisfy the class definition and did not opt out of the settlement class by the deadline are settlement class members bound by this Order. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution. Second, the Court grants Co-Lead Counsel $2,300,000 in attorneys' fees and $278,021.35 in expenses. (Doc. No. 148.) The Court also grants each Lead Plaintiff an incentive award of $4,000. (Id.) The attorneys' fees, expenses, and incentive award will be paid out of the settlement fund.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement. The Court dismisses the action with prejudice, and no cost shall be awarded other than those specified in this Order or provided by the settlement agreement. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

DATED: September 12, 2022

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT